COLUMBUS SOUTHERN RAILWAY COMPANY *v.* WRIGHT.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 753. Argued January 15, 1894. — Decided January 29, 1894.

The provision in the law of October 16, 1889, of the State of Georgia, (Laws of Georgia, 1889, No. 399, p. 29,) distributing for taxation purposes the rolling stock and other unlocated personal property of a railway company, to and for the benefit of the counties traversed by the railroad, does not violate the provision in the Fourteenth Amendment to the Constitution, that no State shall deny to any person within its jurisdiction the equal protection of its laws.

The case is stated in the opinion.

*Mr. William A. Wimbish* for plaintiff in error.

The court declined to hear argument for defendant in error. *Mr. Clifford Anderson* and *Mr. J. M. Terrell* filed a brief for same.

Mr. Justice Jackson delivered the opinion of the court.

The question presented by the record in this case is whether an act of the legislature of Georgia, approved October 16,

1889, entitled "An act to provide a system of taxation of railroad property in each of the counties of this State through which said railroads run, and to provide a mode of assessing and collecting the same, and for other purposes," Laws of Georgia, 1889, No. 399, p. 29, violates that clause of the Fourteenth Amendment to the Constitution of the United States which declares that "no State shall deny to any person within its jurisdiction the equal protection of its laws."

The act complained of provides as follows:

"SECTION I. *Be it enacted by the General Assembly of this State, and it is hereby enacted by authority of the same,* That hereafter in each and every year, on or before the first day of May, each and every railroad company in this State shall make an annual return to the comptroller-general of this State, for the purposes of county taxation in each of the counties through which said road runs, in the following manner: Said return shall be under the oath of the president or other chief executive officer, and shall show the following facts as they existed on the first day of April preceding, to wit: First, showing the aggregate value of the whole property of said railroad company; second, showing the value of the real estate and track bed of said company; third, showing the value of the rolling stock and all other personal property of said company; fourth, showing the value of the company's property in each county through which it runs.

"SEC. II. *Be it further enacted, etc.,* That, whenever the amount of the tax levy of any county through which the said railroad runs is assessed by the authority of such county, it shall be the duty of the ordinary thereof to certify the same and transmit such certificate to the comptroller-general; and the property of such railroad companies shall be subject to taxation in each and every county through which the same passes to the same extent and in the same manner that all other property is taxed, in the manner hereafter set out.

"SEC. III. *Be it further enacted, etc.,* That, whenever such certificate is received by the comptroller-general, it shall be his duty to proceed to assess the amount of each and every railroad company's property, in each and every of said coun-

ties, in the following manner: First, it shall be assessed upon the property located in each county upon the basis of the value given by the returns required by section first of this act; second, the amount of tax to be assessed upon the rolling stock and other personal property is as follows: As the value of the property located in the particular county is to the value of the whole property, real and personal, of the said company, such shall be amount of rolling stock and other personal property to be distributed for taxing purposes to each county. These two, the value of the property located in the county and the share of the rolling stock and personal property thus ascertained and apportioned to each of such counties, shall be the amount to be taxed to the extent of the assessment in each county.

"SEC. IV. *Be it further enacted*, That should the property of any railroad company in this State be not subject to taxation, as hereinbefore provided, but taxable upon its net income, such railroad company shall report to the comptroller-general the entire length of its road, the different counties through which such road runs, and the number of miles in each county, which report shall be made at the time that railroad companies are required to return their property for taxation. When the income of such road is returned to the comptroller-general, he shall estimate the amount of income for each county through which such road runs, upon which shall be levied for such county a tax to be ascertained in the following manner: In the proportion that the road in each county bears to the whole length of the road, in that proportion shall the income returned by said road be taxed by each county through which it passes. Such income shall be taxed at the rate fixed by the charter of such railroad company, which tax shall be assessed and collected by the comptroller-general, and by him paid over to the county entitled to such tax. If any railroad company refuses to pay such tax, the comptroller shall issue execution for the amount of said tax due to each county, which shall be levied on any property of said company. The railroad company may resist such tax as is herein provided in case of tax on property of railroad companies.

"SEC. V. *Be it further enacted, etc.*, That whenever the comptroller-general shall ascertain and levy in the manner specified in the preceding section, the amount of tax due by such company to each of such counties, it shall be his duty at once to notify the president and treasurer of such railroad company of the amount due in each of said counties for county taxes of said railroads, and each and every road is hereby required, within sixty days from the receipt of such notice, to pay to the tax collector of each county through which the railroad runs the amount mentioned by the comptroller-general, as the tax due to such county.

"SEC. VI. *Be it further enacted, etc.*, If any railroad company shall refuse to pay, within sixty days, the amount thus ascertained and due by it, to the tax collector of any county to which the same is due and payable, it shall be the duty of the comptroller-general to at once issue a *fi. fa.* in the name of the State of Georgia, against such railroad company, for the same; to be issued, levied, and returned in the same manner as tax *fi. fas.* are issued for state taxes due in the State by said companies.

"SEC. VII. *Be it further enacted, etc.*, If any railroad company shall dispute the liability to such county tax, it may be done by an affidavit of illegality, to be made by the president of said railroad in the same manner as other affidavits of illegality are made, and shall be returned for trial to the Superior Court of the county of Fulton, where such cases shall be given precedence for trial over all other cases, except tax cases, in which the State shall be a party.

"SEC. VIII. *Be it further enacted, etc.*, That all laws and parts of laws in conflict with this act be, and the same are hereby, repealed."

By an act approved in 1874, (Act of February 28, 1874, No. 107, p. 109, Laws of 1874,) provision was made for the taxation of railroad property for state purposes, but this act of 1889 was the first statute enacted providing for the taxation of railroad property for county purposes.

The plaintiff in error is a corporation organized and existing under the laws of the State of Georgia, having its principal

office or domicil in the city of Columbus, Muscogee County, in that State, with its line of railway extending through the counties of Chattahoochee, Stewart, Terrell, Webster, and Lee, to the city of Albany in the county of Dougherty. With the exception of its right of way, road-bed, super-structure, depots, and usual appurtenances along the line of its road, the undistributed property of the corporation, such as its choses in action, etc., is situated in Muscogee County.

Under the provisions of the first section of the act set out above, the railroad company made return of its property for the year 1890. Upon the basis of that return the comptroller-general of the State assessed and levied taxes for the benefit of the several counties through which the railroad extended, (after such counties had certified to him their respective tax rate and levies,) and on October 27, 1890, notified the company that the taxes so levied must be paid to the respective tax collectors of the several counties within sixty days from the date of that notice.

The tax rate upon the property thus assessed, as stated in the notice of the comptroller-general, was different in the different counties. For Muscogee County it was 2½ mills; for Chattahoochee it was 8 mills; for Stewart it was 5 mills; for Terrell it was 5.34 mills; and for Webster County it was 3.47 mills, these rates of taxation being imposed by the respective counties on other property situate therein, and subject to taxation.

Before the expiration of the sixty days, within which the railroad company was required to make payment of the taxes thus assessed, it filed its bill, or equitable petition, in the Superior Court of Fulton County against William A. Wright, comptroller-general, for an injunction and relief against the payment of these county taxes.

In the petition it was alleged that the act was repugnant to the constitution of the State of Georgia, for various reasons: First, that it was inconsistent with that provision of the constitution which required that " all taxation shall be uniform upon the same class of subjects and *ad valorem* on all property subject to be taxed within the territorial limits of the

authority levying the tax;" second, that the act was a special one, whereas the constitution required that all taxes should be levied and collected under general laws; third, that the act provided for a tax to be levied and collected by the State for the benefit of the counties, when the State had no authority under the constitution to tax for such a purpose; fourth, that the act embraced two subjects-matter, viz., the "property of certain railroads," and also the "net incomes as to certain other railroads," while the constitution declares that "no law or ordinance shall pass which refers to more than one subject-matter;" fifth, because the affidavit of illegality which a railroad company was authorized to file against an execution to collect the taxes authorized by the statute was required to be filed and tried in the Superior Court of Fulton County without reference to the domicil of the company, thereby conferring upon that court a greater jurisdiction than the constitution allowed; and, sixth, that the act violated the Constitution of the United States, in that it conflicts with the clause of the Fourteenth Amendment, which declares that "no State shall deny to any person within its jurisdiction the equal protection of its laws."

The defendant interposed a general demurrer to the petition, which the Superior Court of Fulton County sustained, and dismissed the petition, holding that the act was not repugnant to the provisions of either the State or the Federal Constitutions in any of the respects alleged. From that judgment the railroad company prosecuted a writ of error to the Supreme Court of the State, which court fully reviewed and considered the questions, and in affirming the judgment of the court below held that the act of 1889 in no way violated the constitution of the State and in no way discriminated against the railway company so as to deny it the equal protection of the laws, and was not, therefore, repugnant to the Fourteenth Amendment of the Constitution of the United States. 89 Georgia, 574. The present writ of error was sued out to reverse this judgment.

Upon this writ of error we cannot, of course, review the construction which the Supreme Court of the State has placed

upon its own constitution and the act in question. The Federal question sought to be raised by the plaintiff in error is embodied in the two general propositions that "the rolling stock and other unlocated personal property owned by the railway company is, by the provisions of the act, distributed for taxation purposes to and for the benefit of the several counties traversed by the railroad, while personal property of all other persons and companies is taxed in and by the county in which the owner resides; and, secondly, that the unlocated, intangible personal property of railroad companies is distributed for taxing purposes to the several counties, while the intangible personal property of all other persons follows the domicil of the owner, and is there taxable."

These two objections embody substantially the single proposition that the act in question discriminated against the railroad company in not taxing its unlocated or intangible personal property at the place of the railroad company's domicil or principal office; in other words, in the county of Muscogee. This proposition was disposed of by the Supreme Court of the State as follows, pp. 593–595:

"The next objection made by the petition is that the requirement of the constitution as to uniformity in taxation is violated, because certain personal property of railroads is taxed for the benefit of counties, though not situated therein, while as to other corporations and individuals county taxation is imposed, so far as any particular county is concerned, only on property within its territorial limits. This objection is disposed of by what has already been said. We have shown that in each county its rate of taxation is applied to the property of the railroad actually located therein, and that it is perfectly just and proper to distribute the unlocated personalty of the road for taxing purposes in fair proportion among the several counties, the corporation residing *sub modo* in all the counties along its line of road, and therefore in one as much as in another.

"In the next place, it is contended that the same paragraph of the constitution is violated because the act prescribes a different rate of taxation in each of the several counties through

which a railroad passes. The obvious answer to this objection is that the act does not thus impose any tax substantially different from the county taxes imposed on all other tax-payers. Certainly it does not, in any view of the question, impose any tax for state purposes. It merely provides a means for the county to apply to railroad property its own rate of taxation and collect the tax for county purposes. The vital thing is the rate, and the State has nothing to do with fixing it in any county beyond general regulations restricting its amount and the like. It is entirely immaterial whether mere ministerial acts and calculations, which when correctly done and made can have but one possible result, are the work of the comptroller-general or of the county authorities. If the act provides, as we think it does, a constitutional scheme of taxation, what possible difference can it make whether the amounts upon which taxes are to be paid are arrived at by one officer or another, such amounts being necessarily the same in either event? As the tax is for the exclusive benefit of the county, and it fixes the rate, it is *a county tax*, and so long as a county taxes all property within its jurisdiction *ad valorem* and at the same rate, the uniformity required by the constitution is observed, and this is true no matter what functionary acting by law for the county does the necessary ministerial acts. The question is all the more free from difficulty because under our system each taxpayer values his own property for taxation and makes his own returns. So under the present law the railroad can and does make returns to the comptroller-general, which serve the same purpose as if it made separate returns to the tax receivers. It fixes the amounts on which it must pay taxes, and each county fixes its own rate. Hence under this law a railroad would not have to pay more tax than if each county by its own officials attended to the whole business. Not being therefore really injured, the railroads have in this respect no ground of complaint. Indeed, *under this law* these corporations have one advantage over other taxpayers. Returns made to tax receivers are overlooked by the grand juries, and a system is provided for increasing the valuation of a taxpayer's property

when he undervalues it. Code, §§ 923 (b) *et seq.* No such rule is applied to railroads by this act, but their returns stand as they make them, whatever may be the law as to their returns for state taxation. We will only add that as the act allows corporations, whose property is taxable under it, to designate in their returns what part of their property (real and personal) is located in a particular county, there is no ground for the complaint that the law *may* subject property located in one county to the rate of taxation prescribed by some other county. If, for example, the plaintiff in error returns a switch engine as a part of its property located in Muscogee county, it will be taxed at the rate prescribed by the authorities of that county, and none other."

This decision of the Supreme Court of the State establishes, what is conceded by plaintiff in error, that the rate of taxation and the mode of valuing the railroad property for assessment was in all respects the same as the rate and mode prescribed for other taxpayers. So, that, the only difference between the county taxation upon railroad property, real and personal, and that of other persons or companies consisted in the method of distributing the transitory or unlocated personal property of the railroad company, as valued by itself, among the several counties entitled to share therein, for the purposes of taxation. In other words, the question is whether the railroad company has any constitutional right to have its transitory property assessed for taxation alone in Muscogee County, and whether the distribution, among the several counties, of such property is such a discrimination against the railroad as denies to it the equal protection of the laws?

This is hardly an open question. Various modes of taxing railroad property are adopted by the different States. In some, railroad companies are taxed upon their property as a unit. In others, the road and the property in each county are separately assessed, and in still other States, the whole road is assessed, and then the assessment apportioned among the several counties and towns. These and all similar modes of taxation are subject to the legislative discretion of the respective States, and do not ordinarily present any Federal question

whatever. But the mode of distribution of the unlocated or transitory personal property is a matter of regulation by the state legislature, which in no way involves a violation of the Fourteenth Amendment.

In *Kansas City &c. Railroad* v. *Severance*, 55 Missouri, 378, 388, the Supreme Court of Missouri, in dealing with this question, said : " The proposition is undoubtedly true, that where a corporation has its residence, there the property of this description is liable to assessment and taxation if the law has prescribed no different rule on the subject. This notion of the *situs* of personal property following the personal residence of the corporation is a legal fiction, but is not an unbending and uncontrollable principle of law. It may be modified by the legislature. The rolling stock of a railroad company has no more local existence in one county than another. . . . This machinery by which the road is operated is constantly passing from one terminus to the other of the entire road, and to save all cavil and dispute in respect to it, it was perfectly competent for the legislature to say that it should become a part of the road itself and become property the same as the road, and that for the purpose of taxation it should be equally distributed through the counties, cities, or towns through which it passed in proportion to its length in these respective localities."

The principle here announced is repeated in the well-considered case of *Franklin County* v. *Railroad Co.*, 12 Lea, (Tenn.,) 521, 537, 538, 539, which involved substantially the same question of the *situs* for the purpose of taxation of the rolling stock and personal property of railway companies. It was there said by the Supreme Court of Tennessee : ".The property of a railroad company for purposes of taxation consists of its realty, its local personalty, its rolling stock, its choses in action, and its franchise. The franchise is the privilege conferred by the charter of incorporation, namely, the right to exercise all the powers granted in the mode prescribed for the purpose of profit. It is a unit, not confined to any one county in which it may be exercised. The principal part of the franchise is the right to charge for freight and pas-

sengers, the charge being limited within a prescribed or rea-
sonable rate for carriage in the proportion of the distance of
transportation.   Obviously, after ascertaining the value of the
entire franchise in the State as a unit, no more approximate
or just division of this value can be made for purposes of
taxation than to allot it among the counties through which
the track runs in the proportion of the length of track in the
county to the entire length of road in the State.   And this is
what was done by the acts under consideration.   The choses
in action of a corporation, its rolling stock, and personal prop-
erty, according to the principles of the common law, have
their *situs* at the domicil or place of business of the company.
*Mayor, etc., of Gallatin* v. *Alexander*, 10 Lea, (Tenn.,) 475;
*Nashville* v. *Thomas*, 5 Cold. (Tenn.,) 607; Cooley on Taxa-
tion, 273.   But the legislature may change the *situs* of such
property for purposes of taxation.   *McLaughlin* v. *Chadwell*,
7 Heis. (Tenn.,) 389, 406; *Bedford* v. *Nashville*, 7 Heis. (Tenn.,)
409; *State Railroad Tax Cases*, 92 U. S. 575, 607; Cooley on
Taxation, 274.   .   .   .   The rolling stock of a corporation,
used in transporting passengers and freight over any and all
parts of its line of road, cannot be said to have a *situs* which
would give a preference to any county through which the road
may run over any other county in like situation.   The choses
in action of a railroad company, created by the exercise of its
franchises, on every part of its track, may be equally said to
be without a *situs* so as to give a preference.   The legislature
might well treat them as the franchise itself, for, or by, the
exercise of which they are created, and proportion the general
valuation among the counties through which the road may
run according to the length of road in each county.   The
roadway itself of a railroad depends for its value upon the
traffic of the company, and not merely upon the narrow strip
of land appropriated for the use of the road, and the bars
and cross-ties thereon.   The value of the roadway at any
given time is not the original cost, nor, *a fortiori*, its ultimate
cost after years of expenditure in repairs and improvements.
On the other hand, its value cannot be determined by ascer-
taining the value of the land included in the roadway as-

sessed at the market price of adjacent lands, and adding the value of the cross-ties, rails, and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value, for taxation, of a railroad track can only be determined by looking at the elements on which the financial condition of the company depends, its traffic, as evidenced by the rolling stock and gross earnings in connection with its capital stock. No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all reliable, unless, indeed, the local assessors are furnished with the means of estimating the whole road."

The principle set out in the above quoted authorities is clearly sanctioned by this court in the *State Railroad Tax Cases,* 92 U. S. 575, 607, where the same objection to the system of taxation by the State, as here presented, was made that the rolling stock, etc., was personal property, and that it and other personal property had a *situs* at the principal place of business of the corporation, and could be taxed in no other county but the one where it was situated. This court met that objection by saying: "It may be doubted very reasonably whether such a rule can be applied to a railroad corporation as between the different localities embraced by its line of road. But, after all, the rule is merely the law of the State which recognizes it. . . . Like all other laws of a State, it is, therefore, subject to legislative repeal, modification, or limitation, and when the legislature of Illinois declared that it should not prevail in assessing personal property of railroad companies for taxation, it simply exercised an ordinary function of legislation. Whether allowing the rule to stand as to taxation of individuals, and changing it as to railroads or other corporations, it violated any rule of uniformity prescribed by the constitution of the State, we will consider when we come to the constitutional objections to the statute."

In its further consideration of that case the court held that changing the *situs* of such unlocated property of a railroad.

company, and distributing it to the counties through which the road extended, in no way violated the rule of uniformity or discriminated against the railroad company. In that case, as in this, there was no claim that the rate of taxation levied by any county on the assessed value of the property within its limits was greater than on other property; nor was the valuation different from that placed upon other property. In the present case the railroad company, like other property owners, placed its own valuation upon the property. It was also held, in the case just cited, that taxes are uniform when the rate of taxation is the same on assessments ascertained by the same method.

Without reviewing authorities on this subject, the principle involved in the case under consideration is not distinguishable from the principle involved in *State Railroad Tax Cases*, 92 U. S. 575; and in *Kentucky Railroad Tax Cases*, 115 U. S. 321, 339; *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26; and in *Charlotte, Columbia & Augusta Railroad* v. *Gibbes*, 142 U. S. 386.

The whole complaint made by the plaintiff in error is that it had a constitutional right to have its rolling stock, and other unlocated personal property, taxed in the county of Muscogee, where it had its principal office, and to give such property a different *situs*, under the act complained of, by distributing it among the counties through which the road extended, was an unjust discrimination, and violated its constitutional rights. This proposition cannot be entertained for a moment, for the reason already stated, that it was clearly within the province of the legislature of Georgia, to give such personal property a different *situs*, for purposes of taxation, from that of the company's principal office. The act in question having apportioned the transitory and unlocated property of the railroad company among the several counties through which the road extends for the purpose of taxation, and having subjected such property to the same rate of taxation imposed upon all other property in the respective counties, the fact that the rate of taxation varied in the different counties, according to their respective wants and necessities,

involved no discrimination against the railroad company. The State having the undoubted authority to fix the *situs* of such property, and having lawfully distributed it proportionately between the several counties traversed by the road, it thereby became subject to the same rate of taxation as other property in the respective. counties. This involved no inequality, and violated no provision of either the state or Federal Constitution. It certainly did not involve a failure to extend to the plaintiff in error the equal protection of the laws.

The Federal question involved in the case was correctly decided by the Supreme Court of the State, and the judgment of that court is therefore          *Affirmed.*