17,200

WESTERN UNION TELEGRAPH COMPANY v. TAGGART, AUDITOR, ET AL.

STATUTE.—*Enactment, Conclusiveness of Certificate of Passage.*—It can not be shown that an enrolled bill, having attached to it the certificate of the two presiding officers of both houses of the Legislature to the effect that it had passed each officer's respective house, and the signature of the Governor approving it, on file in the office of the Secretary of State, was never passed by the Legislature in conformity with the provisions of the Constitution touching the enactment of laws. Such authentication is conclusive evidence that the act was duly passed in conformity with the provisions of the organic law of the State, and imports absolute verity.

TAXES.—*Telegraph Company, Validity of Statute of 1893.—Interstate Commerce.—Statute of 1891.*—The statute of 1893 (p. 374) providing for the assessment and valuation of telegraph lines is valid, and is not an infringement of the interstate commerce law. That statute and the statute of 1891 (p. 199) are only different parts of one and the same law of taxation.

SAME.—*Telegraph Line, Value of Entire Line in Several States.—Estimation of Value.*—A statute requiring the whole of the line of a telegraph company running into or through a State to be taken into consideration in ascertaining the value of that portion within this State, is valid and not open to the objection that it is a taxation of property in another State, nor that the value of the line in another State is added to the value of that portion of the line in this State.

SAME.—*Presumption Concerning Valuation of Interstate Telegraph Line by State Board of Tax Commissioners.*—The presumption is that the State Board of Tax Commissioners in fixing the valuation of so

Western Union Telegraph Company *v.* Taggart, Auditor, *et al.*

much of a telegraph line as was within this State, deducted from the total value of all interstate property such values of extra State property, if any, as left the remaining property, within and without this State, as near as may be, of equal proportional value.

DEMURRER.—*Admits Facts not Conclusions.*—A demurrer admits facts well pleaded, but not all the conclusions which may be drawn from such facts by the pleader.

From the Marion Circuit Court.

*J. M. Butler, Sr., A. H. Snow, J. M. Butler, Jr., W. Brown, C. W. Wells* and *S. O. Pickens,* for appellant.

*W. A. Ketcham,* Attorney General, *A. G. Smith,* Attorney General, *J. W. Kern, A. J. Beveridge, L. O. Bailey, M. Moores, S. Claypool* and *J. W. Claypool,* for appellees.

HOWARD, J.—This was a suit for injunction, begun in the Marion Circuit Court against the auditors and treasurers of each of the counties of the State in which the lines of the appellant telegraph company are situated, to restrain the county auditors from apportioning to the several townships of such counties and entering upon the tax duplicates the amounts claimed as taxes against said appellant company for the year 1893, based upon the valuations certified to such county auditors by the state board of tax comissioners under provisions of an act of the General Assembly of the State of Indiana, approved March 6, 1893, Acts 1893, p. 374, (R. S. 1894, section 8478, and following), and from delivering the tax duplicates containing such entries to the county treasurers. The grounds upon which the injunction was asked were that the act in question was not passed in accordance with the provisions of the constitution of the State of Indiana; and, if duly enacted, that it is in violation of said constitution and of the constitution of the United States.

To the complaint for injunction a demurrer was sus-

tained, and this ruling of the court is the only error as-
signed on the appeal.

The first proposition argued by the able counsel for
appellant is:    That the act in question, and under the
provisions of which the assessment of taxes was made,
never became a law of the State of Indiana, for the reason
that, as shown by the journals of the Senate and House
of Representatives, the bill was passed by the Legislature
and sent to the Governor within the two days next preced-
ing the final adjournment of the General Assembly, in
violation of article 5 section 14 of the State Constitution.

A demurrer admits facts well pleaded, but does not
admit all the conclusions which may be drawn from
such facts by the pleader.    Because it is alleged in the
complaint that the bill was passed and sent to the Gov-
ernor on March 6, 1893, the last day of the session, it
is not, therefore, admitted by the demurrer that the
statute was enacted in violation of the constitution.

The exact point here made was made and decided
against the contention of appellant in the case of *Bender*
v. *State*, 53 Ind. 254.    It was there contended, as it is
here, that the courts have the power to go behind the
statute and enquire whether or not the act was passed
according to the constitution; and numerous authorities,
as here, were cited in support of the contention.    The
court in that case, however, deemed it unnecessary to re-
view the decisions cited or to consider the arguments
advanced, for the reason that the question had been
fully considered and finally decided in the case of *Evans*
v. *Browne*, 30 Ind. 514, saying, expressly:    "We regard
the question as settled and will not open it."

In *Evans* v. *Browne*, *supra*, after a complete examina-
tion of the question, including a discussion of the author-
ities in this and other states, it was held, that the courts of
this State must take judicial notice of what is and what is

not the public statutory law of the State, and also that where a statute is authenticated by the signatures of the presiding officers of the two houses of the Legislature, the courts will not search further, to ascertain whether such facts existed as gave constitutional warrant to those officers to thus authenticate the act as having received legislative sanction in such manner as to give it the force of law.

These holdings have been since adhered to by this court, and we are of opinion that they are in accordance with the weight of authority. *Edger* v. *Board, etc.*, 70 Ind. 331; *Board, etc.*, v. *Burford*, 93 Ind. 383; *Stout* v. *Board, etc.*, 107 Ind. 343; *State, ex rel.*, v. *Denny*, 118 Ind. 449; *Hovey, Gov.*, v. *State, ex rel.*, 119 Ind. 395.

In *State, ex rel.*, v. *Boice*, 140 Ind. 506, we have again considered this question and reached the same conclusion. See, also, *Field* v. *Clark*, 143 U. S. 649, where the question is discussed.

The authentication of the act, in the manner provided in article 4, section 25, of the Constitution, that "all bills and joint-resolutions so passed shall be signed by the presiding officers of the respective houses," is conclusive evidence that the act was duly passed in conformity with the provisions of the organic law of the State. Under the guarantee of the constitution, the statute, enrolled and filed in the office of the Secretary of State, comes to us as by the solemn authentication of the Legislature itself, under the hand and seal of its presiding officers. Such authentication imports absolute verity as to the passage of the act; even as in the case of the acts of a court, which are authenticated by its certificate and seal under the hand of its clerk.

Counsel further contend: Second, that the act is invalid in that it fails to provide due process of law; third, in that it denies to the appellant the equal pro-

tection of the laws; fourth, in that it violates the provisions of the Constitution of the United States, which prohibit any State from laying any imposts or duties on imports or exports; fifth, in that it is in violation of the provisions of the State Constitution, which require a uniform and equal rate of taxation; sixth, in that it is in violation of the Constitution of the United States as being a regulation of interstate and foreign commerce; seventh, in that it is in violation of the Constitution of the State as being a local or special law; and, eighth, in that it is in violation of the State Constitution as conferring judicial powers upon executive and administrative officers.

We are of opinion that these propositions have already, in effect, been considered by this court and by the Supreme Court of the United States, and decided against the several contentions of appellant, in the *Pittsburgh, etc., R. W. Co.* v. *Backus*, and other Indiana railroad tax cases; *Cleveland, etc., R. W. Co.* v. *Backus*, *Treas.*, 133 Ind. 513; *Indianapolis, etc., R. W. Co.* v. *Backus, Treas.*, 133 Ind. 609; *Pittsburgh, etc., R. W. Co.* v. *Backus, Treas.*, 133 Ind. 625; *Pittsburgh, etc., R. W. Co.* v. *Backus*, 154 U. S. 421–447.

It is to be remembered that the law under consideration (Acts 1893, p. 374; R. S. 1894, section 8478, and following), for the assessment and taxation of telegraph and other like companies, is supplementary to, and amendatory of, the general act for taxation (Acts 1891, p. 199; R. S. 1894, section 8408, and following); and also that the duties and powers of the State Board of Tax Commissioners and other assessing and taxing officers of the State, are defined and prescribed solely in said general tax law of 1891. The two acts are, therefore, to be treated not only as *in pari materia*, but as in fact but different parts of one and the same law of taxation; and, hence, all the

sections of the act under consideration are to be so construed, if possible, as to harmonize the same with the provisions of the general law.

All questions raised on this appeal, therefore, in relation to due process of law, the equal protection of the laws, notice to appellant of the time and place of meeting of the State Board of Tax Commissioners, the right of appellant to appear before said board and be heard on the assessment of its property before the final assessment is made, taxation of interstate commerce, local or special laws, and the giving to executive and administrative officers judicial powers, were directly passed upon and the provisions of the statute fully sustained, in the Backus cases above cited.

The additional provisions of the act of 1893, p. 374, *supra,* so far as they affect this case, are as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That any joint stock association, company, copartnership or corporation, whether incorporated under the laws of this State or any other State, or of any foreign nation, engaged in transmitting to, from, through, in or across the State of Indiana, telegraphic messages, shall be deemed and held to be a telegraph company, and every such telegraph company shall, annually, between the 1st day of April and the 1st day of June, make out and deliver to the auditor of State a statement, verified by the oath of the officer or agent of such company making such statement, with reference to the 1st day of April next preceding, showing:

"First. The total capital stock of such association, company, copartnership or corporation.

"Second. The number of shares of capital stock issued and outstanding, and the par or face value of each share.

"Third. Its principal place of business.

"Fourth. The market value of said shares of stock on the 1st day of April next preceding, and if such shares have no market value, then the actual value thereof.

"Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the State, and the location and assessed value thereof, in each county or township where the same is assessed for local taxation.

"Sixth. The specific real estate, together with the permanent improvements thereon, owned by such association, company, copartnership or corporation, situate outside the State of Indiana, and not directly used in the conduct of the business, with a specific description of each such piece, where located, the purpose for which the same is used and the sum at which the same is assessed for taxation in the locality where situated.

"Seventh. All mortgages upon the whole or any of its property, together with the dates and amounts thereof.

"Eighth. (a) The total length of the lines of said association or company.

"(b) The total length of so much of their lines as is outside the State of Indiana.

"(c) The length of the lines within each of the counties and townships within the State of Indiana."

Section 5, p. 378, provides, amongst other things, that: "Upon the filing of such statements, the auditor of State shall examine them, and each of them, and if he shall deem the same insufficient, or in case he shall deem that other information is requisite, he shall require such officer to make such other and further statements as said auditor of State may call for."

Section 6, p. 379, reads as follows: "Upon the meeting

of the State Board of Tax Commissioners for the purpose of assessing railroad and other property, said Auditor of State shall lay such statements, with such information as may have been furnished him, before said board of tax commissioners, who shall thereupon value and assess the property of each association, company, copartnership or corporation in the manner hereinafter set forth, after examining such statements and after ascertaining the value of such properties therefrom, and from such other information as they may have or obtain. For that purpose they may require the agents or officers of said association, company, copartnership or corporation to appear before them with such books, papers or statements as they may require, or they may require additional statements to be made to them, and may compel the attendance of witnesses, in case they shall deem it necessary, to enable them to ascertain the true cash value of such property.''

From information thus obtained, section 7 provides for the manner of assessing such property within the State as follows: The market value of the capital stock, added to the mortgages thereon, if any, shall be taken for the true cash value of the whole property. If there is no market value, then the actual value shall be taken. ''For the purpose of ascertaining the true cash value of the property within the State of Indiana,'' the board shall next deduct from the value of the whole property ''the assessed value for taxation, in the localities where the same is situated, of the several pieces of real estate situate without the State of Indiana and not specifically used in the general business of such associations.'' The true cash value of the property within the State of Indiana shall then be found by taking the proportion of such balance which the length of the telegraph lines within the State bears to the total length of the lines. ''From

the entire value of the property within the State so as-certained, there shall be deducted, by said board, the assessed value for taxation of all the real estate, struc-tures, machinery and appliances within the State and subject to local taxation in the counties and townships, * * * and the residue of such value so ascertained, after deducting therefrom the assessed value of such local properties, shall be by said board assessed to said association.''

By section 8, it is provided that the value of one mile in the State, shall be found by dividing ''the residue of such value so ascertained'' by the total mileage in the State. Section 9, p. 381, provides for certifying the valua-tion so found for each county to the several county audi-tors, and section 10 for a like distribution by the auditors to the townships.

It will be noticed that the method thus provided for assessing telegraph property in the State is not essen-tially different from that prescribed in the general tax law of 1891, for the assessment of railroad property.

In both cases, the local property is assessed by local officers, and the general, or unit, property by the State Board of Tax Commissioners; in both, the companies are required to make property statements to the auditor of State, to be by him laid before the State Board; in both, the time and place of meeting of the board is fixed by law; in both, the companies may come before the board to make such further statements as they desire, and they may be required to do so; in both, the board may seek such other information as they shall be able to find, in order to enable them to discover the true cash value of the property in the State; in both, it is the property in the State, and that alone, that can be assessed; and in both, the standard of valuation is the same as in assess-

ing all other property in the State, namely, "the true cash value."

In the Backus Railroad Tax Cases, *supra*, it was contended by counsel for appellants, both in this court and in the Supreme Court of the United States, that the general tax law of 1891 authorized the importation of values into this State, by the State Board of Tax Commissioners, or the taxing by them of property of the railroads not within the jurisdiction of the State, for the reason that such taxation seemed to be implied in section 80 of that act, and also, for the reason that the fourth item of the schedule filed with the auditor of State by the companies required them to report the value of their capital stock for the consideration of the State Board, as provided in section 85 of that act, section 8503, R. S. 1894, as follows:

"Fourth. A statement or schedule showing:

"1st. The amount of capital stock authorized and the number of shares into which such capital stock is divided.

"2d. The amount of capital stock paid up.

"3d. The market value, or if no market value, then the actual value of the shares of stock.

"4th. The total amounts of all indebtedness except for current expenses for operating the road.

"5th. The total listed valuation of all its tangible property in this State."

We think that the schedule required of telegraph companies by the act of 1893, now under consideration, is not substantially unlike the foregoing required of railroad companies, under the act of 1891. In one respect, at least, the schedule under the act of 1893 is more favorable to the companies, namely, in providing for a deduction of the valuation of real property outside the State from the total valuation.

In answer to the contention, made in the railroad tax cases, as to assessment of imported valuations, and also that assessments ought to be made on a basis of cost of construction and maintenance, and with reference to value of land and material in actual use by the companies, without regard to business connections or to "character and amount of business done and the financial credit of the different companies," both of which contentions are also urged in this appeal, the Supreme Court of the United States said, in *Pittsburgh, etc., R. W. Co. v. Backus, supra:*

"Again the act is challenged as permitting and requiring the assessment and valuation of property outside the State. * * * We do not think the matters referred to justify any such imputation. It is not to be assumed that a State contemplates the taxation of any property outside its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the State. It is not necessary that every section of a tax act should in terms declare the scope of its territorial operation. Before any statute will be held to intend to reach outside property, the language expressing such intention must be clear. * * * * * * * *

"It is obvious that the intent of this act was simply to reach the property of the railroad within the State. * * * No intent to the contrary can be deduced from the provision requiring the corporation to file a statement of its total stock and indebtedness, for that is one item of testimony fairly to be considered in determining the value of that portion of the property within the State. The stock and indebtedness represent the property. As said by Mr. Justice Miller in State Railroad Tax Cases (p. 605) [92 U. S.]:

"'When you have ascertained the current cash value of the whole funded debt, and the current cash value of

the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock.'

"In *Franklin, etc.*, v. *Nashville, Chattanooga, etc., R. W. Co.*, 12 Lea 521, 539, the Supreme Court of Tennessee, in a well considered opinion, which was quoted with approval by this court in *Columbus, etc., R. W. Co.* v. *Wright*, 151 U. S. 470, 479, thus referred to the means of ascertaining the value of a railroad track:

" 'The value of the roadway at any given time is not the original cost, nor, *a fortiori*, its ultimate cost after years of expenditure in repairs and improvements. On the other hand, its value can not be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of the cross ties, rails, and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value, for taxation, of a railroad track can only be determined by looking at the elements on which the financial condition of the company depends, its traffic, as evidenced by the rolling stock and gross earnings in connection with its capital stock. No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all reliable, unless, indeed, the local assessors are furnished with the means of estimating the whole road.'   *   *   *

"When a road runs through two states it is, as seen, helpful in determining the value of that part within one state to know the value of the road as a whole. It is not stated in this statute that when the value of a road

running in two states is ascertained, the value of that within the State of Indiana shall be determined absolutely by dividing the gross value upon a mileage basis, but only that the total amount of stock and indebtedness shall be presented for consideration by the State Board. Nevertheless, it is ordinarily true that when a railroad consists of a single continuous line, the value of one part is fairly estimated by taking that part of the value of the entire road which is measured by the proportion of the length of the particular part to that of the whole road. This mode of division has been recognized by this court several times as eminently fair. Thus, in State Railroad Tax Cases, on p. 608, it was said:

" 'It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole.'

"And again, on p. 611: 'This court has expressly held in two cases, where the road of a corporation ran through different states, that a tax upon the income or franchise of the road was properly apportioned by taking the whole income or the value of the franchise, and the length of the road within each state, as the basis of taxation. The Delaware Railroad Tax Case, 18 Wall. 206; *Erie Ry.* v. *Pennsylvania,* 21 Wall. 492.'

"The mileage bases of apportionment was also sustained in *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Maine* v. *Grand Trunk Ry.,* 142 U. S. 217; *Charlotte, etc., R. R.* v. *Gibbes,* 142 U. S. 386; *Columbus Southern Ry.* v. *Wright,* 151 U. S. 470." See, also, *Massachusetts* v. *Western Union Tel. Co.,* 141 U. S. 40; and *State, ex rel.,* v. *Jones,* (Ohio St.) 37 N. E. Rep. 945.

In again considering these questions, the Supreme Court of the United States, in *Cleveland, etc., R. W. Co.* v. *Backus*, 154 U. S. 439, said:

"The true value of a line of railroad is something more than an aggregation of the values of separate parts of it, operated separately. It is the aggregate of those values plus that arising from a connected operation of the whole, and each part of the road contributes not merely the value arising from its independent operation, but its mileage proportion of that flowing from a continuous and connected operation of the whole. * * * When a road runs into two States each State is entitled to consider, as within its territorial jurisdiction and subject to the burdens of its taxes what may perhaps not inaccurately be described as the proportionate share of the value flowing from the operation of the entire mileage as a single continuous road. It is not bound to enter upon a disintegration of values and attempt to extract from the total value of the entire property that which would exist if the miles of road within the State were operated separately. Take the case of a railroad running from Columbus, O., to Indianapolis, Ind. Whatever of value there may be resulting from the continuous operation of that road is partly attributable to the portion of the road in Indiana and partly to that in Ohio, and each State has an equal right to reach after a just proportion of that value, and subject it to its taxing processes. The question is, how can equity be secured between the States, and to that a division of the value of the entire property upon the mileage basis is the legitimate answer. Taking a mileage share of that in Indiana is not taxing property outside of the State."

All that is thus forcibly and convincingly said as to the taxation of interstate railroad property is equally applicable to the taxation of interstate telegraph prop-

erty.   It is not easy to see how one mile of appellant's telegraph line connecting Chicago with New York could be of less value than any other mile of the same line.   Cut out one mile, even though it be through a swamp or under a lake, and the value of the whole line is practically destroyed.   The property is a unit, valuable as a whole and by reason of its several connections, and not by virtue of any part taken by itself.   No way, therefore, by which the value of the lines in this State can be determined seems so just and equitable as to take that proportion of the whole value which the mileage in this State bears to the whole mileage.

A further contention made against the act of 1893, that it provides for a taxation of interstate commerce, is conclusively answered in *Cleveland, etc., R. W. Co.* v. *Backus,* 154 U. S. 445.

"It has been again and again said by this court that while no state could impose any tax or burden upon the privilege of doing the business of interstate commerce, yet it had the unquestioned right to place a property tax on the instrumentalities engaged in such commerce.   See among many other cases, *Marye* v. *Baltimore & Ohio R. R.*, 127 U. S. 117; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18.

"The rule of property taxation is that the value of the property is the basis of taxation.   It does not mean a tax upon the earnings   *   not for the privilege of using the properly, but rests solely upon the value.   But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated.   *   *   *   If property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put.   *   *   *   Take for illustration, property whose sole use is for purposes of interstate commerce, such as

a bridge over the Ohio between the States of Kentucky and Ohio. From that springs its entire value. Can it be [said] that it is on that account entirely relieved from the burden of State taxation? Will it be said that the taxation must be based simply on the cost, when never was it held that the cost of a thing is the test of its value? Suppose there be two bridges over the Ohio, the cost of the construction of each being the same, one between Cincinnati and Newport, and another twenty miles below and where there is nothing but a small village on either shore. The value of the one will, manifestly, be greater than that of the other, and that excess of value will spring solely from the larger use of the one than of the other. Must an assessing board in either State, assessing that portion of the bridge within the State for purposes of taxation, eliminate all of the value which flows from the use, and place the assessment at only the sum remaining? It is a practical impossibility. Either the property must be declared wholly exempt from State taxation or taxed at its value, irrespective of the causes and uses which have brought about such value. And the uniform ruling of this court, a ruling demanded by the harmonious relations between the States and the National Government, has affirmed that the full discharge of no duty entrusted to the latter restrains the former from the exercise of the power of equal taxation upon all private property within its territorial limits. * * * It is enough for the State that it finds within its borders property which is of a certain value. What has caused that value is immaterial. It is protected by State laws, and the rule of all property taxation is the rule of value, and by that rule property engaged in interstate commerce is controlled the same as property engaged in commerce within the State.''

But counsel contend most earnestly that the act of

1893, in applying the mileage basis of valuation to appellant's lines of telegraph, compels the State Board of Tax Commissioners to ¡add large outside values to the values of the Indiana portions of the lines, for the reason, as claimed, that the extra State parts of appellant's property are proportionately of greater value than the parts within the State.

In this counsel do not interpret the law correctly. The act, it is true, provides a method of valuation, the mileage method, as a basis for the taxation of certain property within the State of Indiana. But this is simply a means of determining the true cash value of the property within the State; and if, in the case of appellant's property, or in any other case, it is shown to the board, or is discovered by them, that still further deductions should be made, on account of larger proportional values outside of the State, or for any other reason, then the board must make such deductions, so that, finally, only the property within the State of Indiana shall be assessed, and that at its true cash value.

As said already, and as appears from the title and from section 12 of the body of the act of 1893, p. 382, here in review, that statute is "supplementary to and amendatory of" the general tax law of 1891, and must therefore be construed in connection therewith.

By the act of 1893, sections 68, 69, 70 and 71, of the act of 1891, for which the act of 1893 was substituted, "and all other laws and parts of laws in conflict with this act," were expressly repealed. The express repeal of those sections left all the other sections of the act of 1891 in full force, showing that it was not the intent of the Legislature to abridge or change in any respect the duties and powers of the State Board as fixed by the act of 1891. Neither is the ultimate basis of taxation as there fixed changed by the act of 1893. The cardinal rule remains,

that it is the property within the State, not expressly exempt from taxation, and that alone, which is to be assessed, and that at its true cash value.

By section 3 of this act of 1891, p. 199, "All property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation." Authority is given to tax no other property.

By sections 33, 48, 53, 60, 74, 90, 95, 97, 102, 105, 112, 114, 129, 130, 137, and perhaps other sections, all assessing officers, from the township assessor to the State Board of Tax Commissioners, are required, and bound by their oaths of office, to assess all property at its "true cash value."

By section 120, p. 252, it is made the particular duty of the State Board, amongst other things, "to see that all assessments of property in this State are made according to law."

By section 129, p. 252, it is provided that "the State Board of Tax Commissioners is hereby given all the powers given to county boards of review. They shall not be bound by any reports or estimates of value of railroad property, real estate or other property, as returned to the county auditors or to the auditor of State, but shall appraise and assess all property at its true cash value, as defined by this act, according to their best knowledge and judgment, and so as to equalize the assessment of property throughout the State."

And, by section 130, each member of the board is required to declare, as a part of his oath of office: "I will in no case assess any property at more or less than its true cash value."

Interpreting the act of 1893 in the light of the foregoing provisions of the act of 1891, as we must, we can have no difficulty in concluding, as we do, that in the act of 1893 the Legislature provided the mileage method

as the basis for the assessment of telegraph and other like property, both as to lines situated partly within and partly without this State, and also as to lines running through several counties or other subdivisions of the State, but that it was not the intention of the Legislature, nor is it the meaning of that act, that any property outside of the State should be assessed by importation of values or otherwise, or that any property should be assessed at more or less than its true cash value.

Construing the acts of 1891 and 1893 together, it will therefore be presumed, in the absence of evidence to the contrary, that the State Board has deducted from the total valuation of all interstate property such values, if any, of extra State property as will leave the remaining property, within and without the State, as near as may be, of equal proportional value.

The possibility of such exceptional cases in the assessment of railroad property is referred to in *Pittsburgh, etc., R. W. Co.* v. *Backus, supra,* 154 U. S., p. 431, "as, for instance, where the terminal facilities in some large city are of enormous value, and so give to a mile or two in such city a value out of all proportion to any similar distance elsewhere along the line of the road, or where in certain localities the company is engaged in a particular kind of business requiring for sole use in such localities an extra amount of rolling stock. If testimony to this effect was presented by the company to the State Board, it must be assumed, in the absence of anything to the contrary, that such board, in making the assessment, * took into account the peculiar and large value of such facilities and such extra rolling stock."

So, in this case, the act of 1893 provides, generally, for a mode of ascertaining the true cash value of that part of interstate telegraph and other property which is within the State of Indiana, to wit: the mileage method.

But should there be particular cases where that method must be modified in order to reach the necessary result, namely, the true cash value of such part of the property as is within the jurisdiction of the State, the law of 1893 itself supplies the means of doing so.

In section 6, p. 379, of the act, after speaking of the reports and schedules filed with the auditor and by him laid before the board, it is said that the board shall proceed to assess the property according to the mileage method, "after examining such statements and after ascertaining the value of such properties therefrom, and from such other information as they may have or obtain. For that purpose they may require the agents or officers of said association, company, copartnership or corporation to appear before them with such books, papers or statements as they may require, or they may require additional statements to be made to them, and may compel the attendance of witnesses, in case they shall deem it necessary, to ascertain the true cash value of such property."

Were it true, as counsel for appellant contend, that the act of 1893 provides an ironclad mode of assessment by which the board is required to import and assess valuations of property outside the State, there would be no need of any further information than that given by the schedules filed in the first instance.

The fact that other information is provided for, and agents of the companies and other witnesses may be called, shows that the intention was, as expressly provided in the general tax law of 1891, that the board should assess only property within the jurisdiction of the State, and that only at its true cash value.

That the valuation is upon the capital stock is no objection to the statute. The law looks through forms and rests upon things. In speaking of the Massachusetts statute, similar to that here under consideration, it was

said by the Supreme Court of the United States, in *Western Union Tel. Co.* v. *Massachusetts, supra,* and approved in *Massachusetts* v. *Western Union Tel. Co., supra.*

"The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts; and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property."

To the same effect is *Pullman's Palace Car Co.* v. *Pennsylvania, supra.*

The objection that the company paid taxes under the act of 1891, for the year ending April 1, 1893, is not well taken. The act of 1893 by its terms imposes taxes on appellant's property only from and after the first day of April, 1893.

Finding no error in the record the judgment is affirmed.

Filed May 14, 1895.