**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**MIDLAND INDEPENDENT SCHOOL DISTRICT, et al., Appellees.**

No. 08–82–00025–CV.

Court of Appeals of Texas, El Paso.

Jan. 19, 1983.

Appellee's Rehearing Denied March 2, 1983.

John P. Legendre, Dallas, Rodney W. Satterwhite, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, for appellant.

Charles Tighe, Cotton, Bledsoe, Tighe, Morrow & Dawson, Midland, Joe M. Nuessle, City Atty., City of Midland, J. Brian Martin, Asst. City Atty., Maurice R. Bullock, Bullock, Scott & Neisig, Midland, for appellee.

Before PRESLAR, Chief Justice, and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

This is an ad valorem tax case. Missouri Pacific Railroad Company appeals the trial court's judgments approving the taxing authorities' determination of the fair market value of Appellant's property located within the City of Midland, the Midland Independent School District and the Midland Junior College District for the year 1977.

Both the taxing authorities and Mo-Pac agree as to the value of non-operating properties located within the taxing district. The dispute is over the value of operating properties which includes the actual right-of-way corridor where the trains operate. The reappraisal of Appellant's property by the taxing authorities in 1977 resulted in a substantial tax increase from the preceding year, and such appraisal and increase brought about this suit to have the valuation placed upon the railroad's property cancelled and set aside. Mo-Pac asserted

the method used by the taxing authorities to determine market value was based upon an arbitrary, discriminatory and fundamentally erroneous plan of valuation. We agree, and the judgments of the trial court are reversed.

The railroad valued its operating property within the City of Midland at $185,-547.00. The taxing authority placed the value at $1,131,380.00. The railroad valued its operating property within the school districts at $648,060.00, and those taxing authorities placed the value at $1,669,930.00.

Appellant presents four points of error attacking the trial court's judgments holding that the taxing authorities correctly determined the fair market value of the railroad's operating properties, and asserting the method used in assessing the property was illegal, arbitrary or fundamentally wrong and that such resulted in substantial injury to the taxpayer. A fifth point of error asserts the trial court erred in not finding the value of the properties as testified to by Appellant's expert witness.

Market value is defined as "the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it * *." *City of Austin v. Cannizzo,* 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954); *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936). Generally, market value is determined from one or more of three recognized appraisal approaches, i.e., cost, income or market approach. The market approach is based upon recent sales of comparable property. Ideally, an appraiser would like for comparable sales to involve other property of the same size and shape and be in the same general location as the property being appraised. Therefore, in appraising undeveloped property, an appraiser would ideally like to have a recent sale of another lot of the same size in the same block to use as a comparable sale.

But, in deciding values for properties used by public utilities, pipeline companies and railroads, it is usually impossible to

obtain sales of comparable properties because there are few if any sales of high line right-of-ways, pipeline right-of-ways and railroad right-of-ways. The recognition of such problem caused the Texas Supreme Court in *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918 (Tex.1977), to conclude that "their market value therefore generally cannot be determined by comparing the prices brought by sales of similar properties." This resulted in the court holding:

" * * * the 'comparable sales' method of appraising property is of little use in valuing pipelines; and two other methods of appraisal must be used in assessing those properties. These two methods are the cost approach to value and the income approach to value.

This identical language was repeated by the court in its opinion in *Missouri-Kansas-Texas Railroad Company v. City of Dallas,* 623 S.W.2d 296 (Tex.1981). In that case, the court was reviewing assessments of railroad right-of-way within the City of Dallas and the Dallas Independent School District. The Court of Civil Appeals had held "that comparison sales of property adjacent to a railroad right-of-way are proper summary judgment evidence of the market value of the land within the right-of-way."

The Supreme Court held fact issues were raised which precluded the granting of a motion for summary judgment. In discussing the three approaches to determining value, the court said, "[w]e regard the methods as valid and helpful." It then went further and quoted from the United States Supreme Court opinion in *Columbus Southern Ry. v. Wright,* 151 U.S. 470, 480–481, 14 S.Ct. 396, 400, 38 L.Ed. 238, 243 (1894), where the court said:

* * * value cannot be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of cross-ties, rails and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value, for taxation, of a railroad track can only be determined by looking at the elements on which the financial condition of the company depends * * *.

The court next quoted from its earlier *Polk County* opinion where it concluded that the market approach based upon comparable sales was of little value and held that the "two other methods of appraisal must be used * * *."

Although the court in its opinion went on to recognize that Texas has no valid standard governing the assessment to be used by taxing authorities in this State in determining railroad value and that a court is free to consider all pertinent facts and estimates and to give them such weight as is reasonable, nevertheless, there still remains the requirement of a cost approach and an income approach in determining value where the market approach or "comparable sales" method is of so little value.

■ In this case, the testimony as to the values used by the taxing authorities came from Virgil Jones, Jr., Tax Assessor-Collector for the taxing authorities. He acknowledged that his entire appraisal for the land owned by the railroad within the City was based solely upon a market value approach using comparable sales, although there were no sales of railroad right-of-way. All of his sales were of vacant land located just north or south of the railroad right-of-way. He arrived at a value for the operating property within the City of Midland of $1,131,380.00. This was after he had reduced his original figure by fifty percent because of the restricted use of the land. Based upon his calculations, the tax for both the operating and non-operating property within the City of Midland was $6,128.00 as compared to the sum of $1,428.62 which Mo-Pac claimed it owed under its rendition of its property. Based upon the 1977 appraisal, the tax due to the two school districts was more than twice the amount the railroad claimed it owed.

■ We conclude that a failure upon the part of the taxing authorities to use the cost approach to value and the income approach to value, as directed by the Supreme Court of Texas, and the use instead of only

a market approach, which has been held to be of little use when there are no real comparable sales, resulted in an illegal, arbitrary and fundamentally erroneous method of appraising the land located in Appellant's transportation corridor within the City of Midland. In *Texas Eastern Transmission Corporation v. Sealy Independent School District*, 580 S.W.2d 596 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), Chief Justice Coleman noted that the Supreme Court of Texas had approved two methods for appraising the value of interstate gas transmission lines, namely the cost approach to value and the income approach to value. Since railroad right-of-way is sold on the open market even less than pipeline right-of-way, we must conclude that the Supreme Court intended the same rule to apply to interstate railroad right-of-way, particularly since the rule announced in the *Polk* case was quoted verbatim in the *City of Dallas* case involving railroad right-of-way. Based upon other testimony in the record which shows the use of an approved method of valuation, it appears that substantial injury has resulted from the use of an unauthorized method of valuation. We sustain Appellant's Points of Error Nos. One through Four.

In its last point of error, the railroad contends the trial court erred in failing to find the value placed upon Appellant's operating properties by its expert witness was the fair market value for the assessment of taxes on said property. This point cannot be sustained. As Justice Keith noted in *Tenneco, Inc. v. Polk County*, 560 S.W.2d 416 (Tex.Civ.App.—Beaumont 1977, no writ):

> * * * expert testimony as to the market value of its system simply raised a question of fact for determination by the court. Such expert testimony did not require acceptance by the trial court. *Broussard v. Moon*, 431 S.W.2d 534, 537 (Tex.1968), and authorities therein cited.

Point of Error No. Five is overruled.

The judgments of the trial court in the three separate cases which have been consolidated for appeal are reversed and the cases remanded to the trial court.