**L. D. DARBY, Appellant,**

v.

**BORGER INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 7430.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 11, 1965.

Rehearing Denied Feb. 8, 1965.

White, White & White, Borger, for appellant.

Jack Hood, Gassaway, Allen & Norman, Borger, for appellees.

CHAPMAN, Justice.

Plaintiffs, Borger Independent School District and Borger Junior College District, filed suit on March 17, 1961, against L. D. Darby for collection of ad valorem taxes then delinquent upon his restaurant building and fixtures. By supplemental petition filed on June 31, 1963, they impleaded the other taxing units and sued additionally for all taxes that might become delinquent subsequent to the filing of such petition and before judgment. The record shows no answer to have been filed until June 5, 1961. It appears that four amended answers were filed by appellant but the record shows only the pleadings of Defendant's Fourth Amended Answer and First Amended Action for Injunction to Restrain Enforcement of the Tax Assessment, which he filed on September 2, 1962. The trial of the case to a jury started on June 17, 1963.

In reply to five issues submitted the jury answered that the boards of equalization for the taxing units involved did not make a bona fide effort to assess the taxable property within such districts at a fair, just, equal and uniform valuation for taxing purposes and that the valuations by such boards as to appellant's property were not equal and uniform as compared to valuations placed upon other taxable property within such districts. However, the jury found in issue number five, the only other issue submitted, that no substantial injury resulted to Mr. Darby by reason of the valuations made by the boards of equalization. The county is not involved in the appeal. The named educational institutions are plaintiffs and will be referred to as such or as appellees when their respective names are not used. The City of Borger is intervenor and will be referred to as such or as The City.

The trial court after studying the record disregarded the answers of the jury to the first four issues submitted and upon the jury's answers to special issue number five rendered judgment for the taxing units and for penalty, interest, and attorney's fees to March 17, 1961. He required a remittitur of penalty and interest from the last named date because it was not, he said, appellant's fault that the suit was not tried any sooner.

Appellant first contends reversible error for failure of the taxing units to make out a prima facie case "in that neither had introduced or proved the tax rolls are properly certified, authenticated copies thereof."

Exhibits introduced into evidence without objection show certified copies of the tax records of the taxing units. The statement of facts shows the original rolls were in the courtroom available for use and counsel for appellant agreed they might be returned to the vaults. No objections to the copies as such were ever made and no request made to compare them with the originals. Under this state of the record we believe the point is without merit. Article 7326, Vernon's Ann.Tex.Civ.St.; Stone v. City of Dallas, Tex.Civ.App., 244 S.W.2d 937 (writ dismissed); Newton v. Highland Park Independent School Dist., Tex.Civ.App., 361 S.W.2d 916 (N.W.H.); Rachford v. City of Port Neches, Tex.Civ.App., 46 S.W.2d 1057 (N.W.H.); Rees v. State, Tex.Civ.App.,

149 S.W.2d 184 (writ dismissed, judgment correct).

■ The taxing units having made out a prima facie case of the validity of the assessed valuations, the burden then rested upon appellant to go forward with proof which would meet requirements of law for avoiding the valuations. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; State v. Republic Natural Gas Co., Tex.Civ.App., 181 S.W.2d 592 (refused w. m.).

Appellant next contends that his assessed valuations on which percentage of taxes were taken had been changed without notice.

On numerous occasions throughout the trial, in attempting to follow the testimony, the court told counsel in effect that he was confused on what they were attempting to prove and as to what the witnesses had said. In studying the record, we can certainly understand his reason for such statements. There are many, many repetitious statements and more than a few contradictions and contradictory contentions. For example, in numbered paragraph four of appellant's Fourth Amended Answer, in reference to all taxes he is contesting, he pleaded: "That the defendant duly protested these taxes both before the tax assessors and the boards of equalization, but that no action was taken on his protest." We find it impossible from the statement of facts, because of contradictory statements and contentions, to determine if he did or did not do so before each board of equalization for each of the years. His testimony as to the schools shows:

"Q. Now, tell us the College and School, bearing in mind that the Equalization Boards were the same persons and met at the same times and places for the school and the college?

"A. I have nothing written for the school in 1956, but that was the year that the Pritchard & Abbott appraisal was made. I appeared there at the Sam Houston Junior High School building there. Now, that was oral and there was nothing to that. Nothing written on—to the effect of that. There was no information on that whatsoever.

"Q. But your independent recollection, independent of any—

"A. 1956.

"Q. —written memorandum—

"A. 1956.

"A. —indicates to you that you were—that you did appear before them in 1957, and 8, and possibly 1959?

"A. No; I will withdraw the 1959. I have the information here on '57 and '58.

"Q. You did appear before the Independent School District and College District Board of Equalization during 1957 and 1958?

"A. If they are one and the same; yes."

■ We believe it well to state just here that the taxing units involved employed the professional appraising firm of Pritchard & Abbott prior to the years here involved to appraise what they considered to be the cash market value of all the property in the county. Mr. Darby's testimony shows that he had knowledge of the Pritchard & Abbott appraisal in 1956 and that he talked to the city officials that year with respect to his taxes being unfair. We believe this is sufficient to show that he had notice of some sort concerning the change in his city taxes.

■ It is true that Article 1053, V.T.C.S. provides that where the board of equalization raises the value of any property the secretary of the board shall give written notice to the owner of such property or the person rendering the same of a date for hearing, when the owner or person rendering the property may appear and show cause why the value should not be raised. However, our Supreme Court has held that

where owners learn of the hearings and appear they submit themselves to the jurisdiction of the board of equalization. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W. 2d 414.

■■■■ Additionally, the failure to receive notice is a defensive issue and the record shows no pleading raising the issue nor any request for submission of any issues thereon. To the contrary, as heretofore stated, appellant pleaded that he protested the taxes both before the tax assessors of the districts and before the boards of equalization. Rule 279 Vernon's Ann.Texas Rules of Civil Procedure, provides upon all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived. We must therefore conclude this issue must be taken as having been answered by the court in such manner as to support the judgment. As a matter of fact, the court in a letter to all attorneys, following their respective motions for judgment, set out in detail his reasons for rendering judgment for the taxing units. The question of notice was not even mentioned in this detailed letter, thus indicating the trial court considered it of no importance in the trial or in rendering his decision for appellees.

Appellant's contention throughout seems to be that he was discriminated against because the boards of equalization lowered Pritchard & Abbott's appraisal of Hotel Borger to less than half the value placed on it by the professional appraising company while they raised his above the Pritchard & Abbott estimate of value.

■■■■ There is no rule of law we know about that permits duly constituted boards of equalization to abrogate their rights and duties to a professional tax appraising firm. To the contrary, our Supreme Court has held:

"It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. * * * Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith. * * *

"While it has been held that a grossly excessive valuation may, in law, be sufficient to establish such fraud or illegality as to render a valuation void, * * * French Ind. School Dist. v. Howth, 134 Tex. 211, 134 S.W.2d 1036, it is held with equal emphasis that mere errors in judgment or the fact that a trial judge or jury differs with the valuation fixed will not suffice as a basis for avoiding the board's action. * * *" State v. Whittenburg, supra; Druesdow v. Baker, 229 S.W. 493 (Com.App. opinion adopted).

■■■■ The appellant sought injunctive relief to avoid payment of his taxes but the only pleadings before us for such relief were filed long after the valuations of the boards of equalization were already made and suit filed for delinquent taxes. Though the record does not, in our opinion, show an arbitrary and illegal scheme of taxation, even if it did, relief by injunction was subsequent to the time such alleged arbitrary and illegal scheme was put into effect and after the other taxpayers had presumably paid their taxes for several of the years involved, thus requiring a showing of substantial injury. City of Arlington v. Cannon, supra; State v. Whittenburg, supra; City of Houston v. Baker, Tex.Civ.App., 178 S.W. 820 (writ refused); City of Wichita Falls v. Cooper, Tex.Civ.App., 170 S.W. 777 (writ refused).

"By Article 7174, Revised Civil Statutes, 1925, the legislature has directed that 'real property shall be valued at

its true and full value in money,' and by Article 7212 has directed boards of equalization to hear evidence touching the 'market value or true value' thereof. Our courts have interpreted these provisions to mean that assessed valuations shall be based on 'the reasonable cash market value' of property." State v. Whittenburg, supra.

■ Exact uniformity and equality of taxation is unattainable. State v. Whittenburg, supra; Rosenburg v. Weekes, 67 Tex. 578, 4 S.W. 899, 901; Whelan v. State, 155 Tex. 14, 282 S.W.2d 378.

■ A reasonable discrepancy between the true value of the property and the value at which it is assessed for taxes is permissible to cover the difference in judgment as to the value of the property. Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288.

Appellant admitted his real property was worth at a fair cash market value the sum of $13,970. It is difficult to understand the exhibits introduced from the explanations made of them in the statement of facts; but if we understood them, the valuations placed on his property did not exceed the reasonable discrepancy rule. There were no discrepancies in the percentages used for assessments of the true market values; and if we understand the exhibits, sixty-two percent (62%) of the true market value placed by the boards was the highest used for any taxing unit for any year.

■ We also believe, and so hold, that the answers of the jury to the first four above described issues are against the great weight and preponderance of the evidence. Appellant's own witnesses who had served on the boards of equalization testified in effect that they tried to set everyone's taxes at a fair price. For example, Mr. Weddington stated they "tried to set everyone's taxes at a fair price, and that

was what was considered, that was our job, and that was what we tried to do."

We believe one of the fallacies of appellant's contentions is that he is assuming the Pritchard & Abbott valuations as correct, when the boards were not bound by them at all and admitted they used them only as a guide. Who would know better the actual cash value of Hotel Borger than the business and professional men of that city who understood local economic conditions or an out-of-county professional appraising firm unfamiliar with the price it would bring if offered for sale? The question answers itself. Of course, it would be local people familiar with the economy of the city and with the percentage of the rooms rented each night. Even if the Hotel Borger was not taxed at all, it would be doubtful if the record would have shown substantial injury to appellant. The record certainly does not show such injury from the assessments made.

■ The record does show that the boards assessed appellant's property on substantially the same basis as the great bulk of the property on the same tax rolls. Thus, he could not have his assessment cancelled "merely because in isolated instances some of the other property on the tax roll has been assessed at less than its proportionate value." Dallas County v. Dallas Nat. Bank, supra, or "by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable." City of Arlington v. Cannon, supra.

We have held above that appellant's effort for injunction made in this record could not relieve him of his tax liability. The jury has held, with an abundance of evidence to support it, that substantial injury did not result to Mr. Darby by reason of the valuations made by the board of equalization.

Therefore, the judgment of the trial court is in all things affirmed.