MISSOURI–KANSAS–TEXAS
RAILROAD COMPANY,
Appellant,

v.

CITY OF DALLAS, Dallas Independent
School District et al., Appellees.

No. 19835.

Court of Civil Appeals of Texas,
Dallas.

Oct. 24, 1979.

Rehearing Denied Jan. 29, 1980.

Michael R. Johnson, Worsham, Forsythe & Sampels, Dallas, for appellant.

Caroll R. Graham, Asst. City Atty., Dallas, for appellees.

Before AKIN, ROBERTSON and STOREY, JJ.

STOREY, Justice.

Missouri–Kansas–Texas Railroad Company, a common carrier, sued the City of Dallas, the Dallas Independent School District, the City of Dallas Board of Equalization and the City Assessor-Collector alleging that the method used by defendants to determine the fair market value of its operating properties was fundamentally errone-

ous. That value, appellant contends, must be determined by another method, whose use produces a figure lower than the city's assessment, and therefore proves that the city violated the constitutional requirement that no property shall be assessed at a greater value than its fair cash market value. The City of Dallas, which is the Assessor and Collector of ad valorem taxes for itself and for the school district, answered and filed its motion for summary judgment.

The City of Dallas' motion avers that, as a matter of law, the summary judgment evidence showed its valuation method was not arbitrary or fundamentally erroneous. It contends that, as a matter of law, appellant's valuation method constitutes no evidence of fair market value of land, as contemplated by Tex.Rev.Civ.Stat.Ann. art. 7168 (Vernon 1960), and that it constitutes no evidence that its properties were assessed at a substantially higher value than like property owned by others. On the other hand, the railroad contends that the city plan of determining value is defective because it determines value from comparison sales only of adjacent properties rather than of right-of-way properties. For the same reason, it urges that the city's appraisals constitute no evidence of market value. It contends further that a fact issue exists concerning fair market value and that its summary judgment evidence is admissible upon that issue. In support of the motion were the Board of Equalization assessment rolls and the depositions and affidavits of the City's Tax Assessor and its appraisers. In response were the depositions and affidavits of the railroad's tax commissioner, Cavanaugh, and its tax consultant, Ring.

We conclude that, while the city method of valuing railroad operating properties may be inexact, it is, nevertheless, a valuation of real property as required by article 7168; and that it cannot be shown to be arbitrary and erroneous by proof of a different method grounded entirely upon valuation of a going business rather than of its land. We hold, therefore, that the summary judgment evidence is sufficient to prove

that the city method is not arbitrary, and that the railroad's evidence raises no fact issue on the question of value. Accordingly, we affirm.

Article 7168 requires each railroad corporation to deliver annually to the assessor of each city a classified list with a valuation affixed of all real estate that it owns or possesses. In general, section 1 of the article describes real property and improvements other than of right-of-way. These properties are commonly referred to as non-operating properties, and the parties have agreed upon their valuation. Section 2 describes the right-of-way roadbed, superstructure and depots. These are referred to as operating properties, and their valuation is the subject of controversy in this case.

Article 8, section 20 of the Texas Constitution provides in part that no property shall be assessed for ad valorem taxes at a greater value than its fair cash market value. The parties agree that fair cash market value is determined by the willing buyer-willing seller standard, and are also in substantial agreement upon other principles of law to be applied in this case. In particular, the taxpayer has the burden of proving not only that the city's plan is defective but also that its application would result in substantial injury to it. To prove substantial injury, the taxpayer must establish actual market value of its property by competent evidence or by showing its properties are assessed substantially higher than like property interests of others. The question of market value is one of fact, but the question of gross excessiveness is one of law. It is presumed that the agency charged with adopting the assessed valuations acted lawfully and in good faith, and its records are prima facie evidence of validity of the assessed valuations. These principles as they relate to valuation and taxation of real property in this state are well established by statute and case law. *E. g., Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, 923 (Tex.1977) (market value is question of fact); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 573 (1954) (presumption that public agency discharged duty lawfully and in good faith); *Sierra Blanca Independent School District v. Sierra Blanca Corp.*, 514 S.W.2d 782, 788 (Tex. Civ.App.—El Paso 1974, writ ref'd n. r. e.) (tax assessment excessive when found to represent some multiple of true market value); *Corrigan Properties, Inc. v. City of West University Place*, 430 S.W.2d 917, 921 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ) (proof of substantial injury required where relief sought on basis of arbitrary or unlawful plan); *Darby v. Borger Independent School District*, 386 S.W.2d 572, 577 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.) (exact uniformity and equality of taxation unattainable).

Appellant does not allege that its operating properties have no market value. It presented no summary judgment evidence of market value of any other parcel of land lying within the taxing unit, nor was any evidence of assessed value of any other parcel offered for the purpose of showing discriminatory assessment. The railroad's experts admit that their appraisal method is not a valuation of land, but of an operating business. They concede further that they did not physically examine a single piece of the right-of-way or of any land adjacent to it. The city, on the other hand, concedes that its comparison sales did not include a single piece of right-of-way land, but instead were comparisons of land lying adjacent to the right-of-way.

Neither party questions the accuracy with which the other applied its method. The controversy arises over the different and conflicting methods used. The city appraisers used the comparison sales approach. They valued the land on each side of and adjacent to the railroad right-of-way by using comparison sales within the vicinity; they then took the average of the two adjacent sides, reduced this average amount by one-third, and then applied the city's normal seventy-five percent ratio to arrive at an assessed value of approximately $6.7 million. The railroad argues that this method of determining assessed value of its operating properties is arbitrary and fundamentally erroneous.

In support of its contention, the railroad points out that, as a regulated carrier, it is prohibited from abandoning or alienating its operating properties. It would be highly speculative, it argues, to consider valuation of its properties based upon a different use; and, therefore, a comparison sale approach to valuation is not applicable. In the alternative, and as its summary judgment proof that defendant's plan is arbitrary and fundamentally erroneous, the railroad urges use of the unit method of valuation employed by its tax consultant, Ring.

We will first consider the validity of appellant's method before going on to discuss its attack upon the city's method. The unit method, as applied by Ring, is an appraisal of the entire railroad, exclusive of non-operating property, as an operating unit based upon a combination of cost, income, and market approaches. Cost is the acquisition figure taken from the books of the company less depreciation, in this case 17.5%, and less functional and economic obsolescence, which in this case was 58% of book costs. Using the cost approach, Ring found a total value of the operating properties of the railroad's entire system to be approximately 36 million dollars. To be applied to this was the value of the entire operating system based upon the income approach.

Value based upon income is the present value of future rights to income, and, according to Ring, is the most important approach to the finding of value under the unit method. Ring found the railroad had incurred operating losses of approximately 3.5 million dollars for each of the past five years and projected approximately the same average loss for the next five years. Because the pure income approach resulted in a negative value, Ring converted the loss into a plus by calculating its tax benefit to the railroad's parent company, Katy Industries. The value of this tax shelter was determined to be approximately 15 million dollars. To this was applied the market approach, the last of the three approaches employed by Ring.

Because railroads are rarely bought and sold, Ring simulated a market value by determining from the books of the company the aggregate of all of its liabilities, that is, its stocks, bonds, and other securities and obligations. Ring reasons that because under double entry accounting procedures liabilities must equal assets, the sum of the railroad's liabilities must equal the value of its assets. This value, based upon market approach, was determined to be approximately 56 million dollars.

Ring abandoned the cost approach because it did not approximate the other two approaches and because the economic obsolescence factor was based upon his own calculations rather than as reflected in the company's books. Weighing the results of the income and the market approaches equally, he combined the two and took one-half of the sum, arriving at a value of approximately 35 million dollars for the entire operating system. Determining that the 81.1 miles of the system lying within the taxing jurisdiction constituted 3.1% of the railroad's total mileage; and that the total business generated by this mileage, based on tonnage and origination-destination, constituted 6.07% of the railroad's total business; he took one-half the sum of the two percentage figures, 4.59%, and multiplied by the unit value of 35 million dollars. This product, 1.6 million dollars, was found by him to be the market value of the railroad's operating properties lying within the City of Dallas.

The railroad's tax commissioner, Cavanaugh, used substantially the same method of valuation and his results were almost identical to those reached by Ring. Cavanaugh disregarded the cost approach, however, for a different reason. The cost figures as reflected by the company books, according to Cavanaugh, are primarily historical costs, that is, acquisition costs, and are not indicative of market value.

As support for its no evidence point, the railroad relies upon the proposition set forth in *State v. Chavers*, 454 S.W.2d 395 (Tex. 1970), which precludes an expert from basing his opinion testimony upon the value of property which is not, in fact, comparable to the subject property. *Chavers* was con-

cerned with valuation of unimproved property as compared to an actual sale of improved property. Although the rules as set out in that case are well established, we do not consider them controlling in this case because here we are concerned with the value of the right-of-way as used rather than its character as improved or unimproved.

Closely akin to appellant's no evidence argument is its contention that the comparison sales approach is inapplicable in the valuation of railroad right-of-way and, therefore, its expert testimony is admissible on the issue of market value. It relies upon language found in Chief Justice Greenhill's opinion in *Polk County v. Tenneco*, 554 S.W.2d at 921. There it was observed that *because segments of natural gas pipe lines are rarely sold, comparable sales are of little use in their valuation, and consequently, cost and income approaches to value must be used.* It must be remembered, however, that in *Polk County v. Tenneco* the parties were estimating the value of intangibles as well as physical properties because counties may tax intangibles while cities may not. This is borne out by the fact that both parties, the county and the taxpayer, were using the cost-income approach to market value. Furthermore, we do not read the language in that opinion to mean that comparable sales are of *no* value in determining market value of property which is rarely sold or is restricted from sale. On the contrary, it has long been the law that the value of such property is directly affected by surrounding properties.

■ In *Texas & Pacific v. Ward County*, 112 Tex. 593, 251 S.W. 212, 216 (1923), that court stated:

> The fact that the railroad company may use it [right-of-way] and may be able to use it only for railroad purposes, we think, is not material to the inquiry. . . Whether it runs through the heart of a great city or over rich lands in a highly developed agricultural community, the value of the right of way is affected by its location and is worth more than where it traverses the desert. It may, it is true,

not bring any more revenue to its owner by virtue of its location, but its intrinsic and market value is just as much affected by conditions in its vicinity as is the value of property devoted to any other use. Value is fixed by the same conditions which fix the value of property adjacent to it which is devoted to other purposes and fluctuates as does the value of adjacent property.

Appellant urges that this language is dicta. We cannot agree that it is dicta because it is essential to the rationale upon which the court's decision rests. The question before that court was whether an irrigation district could tax the railroad's right-of-way. The railroad contended that its right-of-way could not be affected or its value enhanced by creation of an irrigation district, because it could not irrigate its right-of-way; but the court held that the enhancement of the value of adjacent land also enhanced the value of the right-of-way. We conclude, therefore, that comparable sales of adjacent property are some evidence of the market value of railroad right-of-way. Consequently, we overrule appellant's no evidence point.

The remaining question is whether appellant's summary judgment evidence controverts the city's evidence so as to raise a fact issue. We conclude that it does not because the unit method as applied by the railroad is not a valuation of land. Since the railroad appraisers abandoned the cost approach because it was not indicative of market value, we need only consider whether the income or market approach, or the combination of the two as applied by the railroad appraisers, is evidence of market value.

■■ The income approach to valuation presumes a buyer of income-producing land is primarily interested in the income which the property will generate. Two variables are involved. First, the estimated future income, and second, the estimated rate of capitalization. *See Polk County v. Tenneco*, 554 S.W.2d 918, 921 (Tex.1977). By definition, for the income approach to be valid, the property must be producing income, or its potential *for producing actual income*

must be definite and predictable. Doubtless, an operating loss is a salable item as a tax loss to one who owns other enterprises which incur substantial tax liability, but the amount of the tax loss is not income attributable to the land, nor is the purchase price any indication of the land's value. Purchase of the land is only incidental because the immediate value to a buyer is a tax write-off.

■ This is not to say, however, that the land does not have value, nor does the appellant contend that its land has no value. A buyer will anticipate that at some future time he may make the land productive, while in the meantime enjoying the tax benefits. This is only to say that the income approach to value is not applicable in estimating value in instances where the property produces no income, or, as here, produces a net operating loss.

■ The market approach is applied by appellant only in conjunction with the income approach. If one is determined to be inapplicable, then it follows that the combination of the two is also inapplicable; furthermore, the market approach used by the railroad is substantially the same as the approach which the court in *Polk County v. Tenneco* found to be error, namely, the equating of net book value with market value. 554 S.W.2d at 922–23. We conclude, therefore, that the market approach as applied by appellant is not summary judgment evidence of the market value of the property.

We note that the railroad witnesses' method of valuation resulted in each one-mile segment of right-of-way having an identical value to every other segment within the city. This is true regardless of location, width of right-of-way, or whether it is a spur track or a main line. The legislature could not have intended this result; otherwise, there could be no reason or necessity for providing in article 7168 that the railroad render "The whole length of the railroad and *the value thereof per mile.*" This language presumes that the land to be assessed can have different values depending upon its location and configuration.

Finally, although the railroad concludes that the land comprising its right-of-way has some value, its appraisers admit that they did not appraise land, but rather the value of the operating property of the railroad as a whole. The value of the land, they contend, is not material. The Texas Constitution, article 8, section 20, as well as article 7168, requires that taxes be levied upon land. Consequently, we hold that the railroad's summary judgment evidence of the market value of its operating properties evaluated as a going business raises no fact issue with respect to the fair market value of the land upon which its right-of-way rests.

Our courts have long recognized that exact uniformity and equality of taxation is unattainable. *See generally: State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569, 572 (1954); *Darby v. Borger Independent School Dist.,* 386 S.W.2d 572, 577 (Tex.Civ. App.—Amarillo 1965, writ ref'd n. r. e.). The city here recognizes that its method is inexact because it reduced comparison sales averages of property adjacent to the right-of-way by one-third and because it adopted an assessment ratio with respect to this property, as well as other properties within the city, of seventy-five percent of market value. These assessments at a set percentage figure do not render the plan fundamentally erroneous, but simply recognize that true market value can only be obtained by an actual sale between a willing buyer and willing seller.

■ We hold that comparison sales of property adjacent to a railroad right-of-way are proper summary judgment evidence of the market value of the land within the right-of-way. We further hold that the income approach to valuation cannot be based on operating losses, and that book value, as determined by bonded indebtedness, cannot be equated to market value of assets as a guide to determining the market value of land for ad valorem tax purposes. Accordingly, the summary judgment in favor of the city is affirmed.