rectly attributable to the labors of one or both of the community partners.

During the marriage, the value of the corporation's stock increased from approximately $20,000 to $1,000,000 and the value of that portion of the stock found to be separate property increased from $9,365 to $470,000. All of the increase is attributable to the labor and skill of one (and probably both) of the spouses. This situation is clearly distinguishable from that where one of the spouses held stock on a major exchange as his or her separate property which increased in value because of reasons other than the time and effort of one or both of the spouses.

According to appellant's computations, which for the sake of argument were assumed by appellee to be true, appellee received in addition to the 47% of the stock set aside to him as his separate property, a net community estate equal to 48.6% while appellee received 51.4%. Had there been no large appreciation of the separate stock by reason of community labor, this division would not be unreasonable. Appellee was granted custody of the two minor children born of the marriage and is required to pay appellant the sum of $100 per day during the summer when the children are in her custody. Also, there are tax liabilities incidental to the property received by appellee which would reduce his net share.

■ We are convinced that the court, in making a division of the estate, did not take into consideration the large increment to appellee's separate property by reason of community labor and as a result the division of the estate was manifestly unfair to appellant. This point of error is sustained.

Appellant's last point of error contends that the finding of the court that Tony's Restaurant, Inc. is not the alter ego of Tony Vallone is against the great weight and preponderance of the evidence.

■ There is little doubt that in many respects the financial and business end of the corporation is operated with great informality. Cash is taken from the business when it is needed for personal expenses; neither officer nor directors' meetings are held on a regular basis; and the corporation is run by appellee rather than by its officers or a board of directors. This is not uncommon in a closed corporation. Generally, the corporate form will be disregarded where: (1) the corporation is used as a means for perpetuating a fraud, (2) the corporation is organized and operating as a mere "tool" or "business conduit" of another corporation, (3) resort is made to the corporate fiction in order to avoid an existing legal obligation, (4) the corporate form is used to achieve or perpetuate a monopoly, (5) the corporate structure is used as a vehicle for circumventing a statute, or, (6) the fiction is invoked in order to protect crime or justify a wrong. *Wolf v. Little John Corp. of Liberia*, 585 S.W.2d 774 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ).

■ Although many acts by appellee deviated from ideal management practices, there is no showing or indication that these acts were committed for the purpose of perpetrating a fraud on appellant or others or that in fact a fraud resulted as a result of the acts. This point is overruled.

We affirm the judgment except as to that portion pertaining to the division of the estate of the parties; that part of the judgment is reversed and remanded.

**BANQUETE INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**TENNECO, INC.—TENNESSEE GAS PIPELINE DIVISION, Appellee.**

No. 17980.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 21, 1981.

Rehearing Denied June 25, 1981.

Elvin E. Tackett, Bedford, for appellants.

Stanley B. Binion, Reynolds, Allen & Cook, Houston, for appellee.

Before WARREN, DOYLE and EVANS, JJ.

EVANS, Justice.

Banquete Independent School District appeals from a judgment based upon jury findings of the market value of Tenneco's

pipeline and compressor station in Nueces County. The judgment will be affirmed.

Tenneco brought this action in the district court, asserting a statutory right of appeal from the findings of market value made by the School District's Board of Equalization. The statute in question, Tex. Rev.Civ.Stat.Ann. art. 7345f (Vernon Supp. 1980–1981), provides in pertinent part:

Art. 7345f. Right of appeal by property owner

TIME FOR FILING PETITION FOR REVIEW

Section 1. A property owner is entitled to appeal a decision of any board of equalization to the district court of the State of Texas. A party who appeals to a district court must file a petition for review with the district court within 45 days after the tax roll containing the value involved is approved by the taxing authority.

VENUE

Sec. 2. Venue is in the county in which the board of equalization that made the decision is located.

TRIAL BY JURY

Sec. 3. Any party is entitled to a trial by jury on demand.

VALUE OF PROPERTY FIXED

Sec. 4. (a) The issue to be determined by the district court in an appeal is whether or not the value of the property in question as ascertained by the board of equalization is in error.

(b) *If the court or jury finds that the value as ascertained by the board of equalization is in error, meaning it is higher than the value set out by the property owner in a rendition filed prior to the board of equalization hearings as required by law, then the court or jury shall fix a value for the property in question as of January 1 of the tax year in controversy.* In fixing the value of the property in question, the court or jury shall determine the cash market value and multiply that value by the assessment ratio, if any, in effect for the taxing authority involved. (emphasis added)

(c) The value affixed by the court or jury pursuant to Subsection (b) above shall be binding on the taxing authority or authorities involved in the lawsuit for the tax year in question and for the succeeding tax year. However, in the succeeding tax year the taxing authority may add the value of subsequent improvements to the property, if any, to the value affixed by the court or jury.

The School District contends that this statute is unconstitutional, arguing that Section 4(b) is vague in its meaning because the underlined words "in error," as qualified by the word, "higher," must be interpreted as meaning that the jury's finding of value is higher than the value rendered by the owner. This interpretation ignores the clause "as ascertained by the Board of Equalization" and places a strained construction on the entire language of the section. The language of Section 4 is plain and unambiguous, and the clear intent of the legislature should not be disregarded. *Missouri, K. & T. Ry. Co. v. Blanks* 103 Tex. 191, 125 S.W. 312 (1910). Obviously, the legislature intended to authorize the court or jury to determine the market value of the property, and if it determined that the value, as ascertained by the Board of Equalization, was "in error," i. e., an erroneous figure that was higher than the value rendered by the property owner, it was to fix the value of the property as of January 1 of the tax year in question.

The School District also contends that the statute is unconstitutional because it applies only to certain taxing jurisdictions. Arguing that there is no statutory scheme requiring a school district to approve a tax roll, it contends that the statute does not apply to independent school districts because it requires a petition for review to be filed in the district court within 45 days after the tax roll is approved by the taxing authority. Again, the school district's proposed construction of the statute would ignore the statute's plain and unambiguous provisions. Section 1 specifically provides that a taxpayer has the right to appeal from a decision of *any* board of equalization. It was obviously the intent of the

legislature to require that a taxpayer act promptly if he wished to challenge the value set by the Board of Equalization, and it is undisputed that Tenneco filed its petition in the district court within forty-five days of the notice of valuation issued by the Board of Equalization.

■ The School District further contends that the statute violates article VIII, Section 1 of the Texas Constitution which provides that taxation shall be equal and uniform and that all real property and taxable personal property in the State shall be taxed in proportion to its value. Because § 4(c) provides that a finding of value by the court or jury is binding upon the taxing authority for the tax year in question and also for the succeeding tax year, the School District argues that taxation cannot, under the statute, be equal or uniform in the second tax year because of the inevitable appreciation or depreciation of the market value of the property. The Texas Constitution does not expressly or by necessary implication prohibit a statutory requirement that a taxing authority be bound by the finding of the court or jury for the taxable year and also for the next succeeding year.

The School District's first point of error is overruled.

■ The School District next complains that the evidence is insufficient to support the jury's verdict and the judgment based thereon. In points of error two and seven it contends that the trial court erred in refusing to grant its motion for instructed verdict. These points will be considered as challenging the legal sufficiency of the evidence because a motion for directed verdict is proper only if there is no evidence of probative force upon which the jury could make its findings. *Travelers Insurance Co. v. Williams*, 378 S.W.2d 110 (Tex.Civ.App.— Amarillo 1964, writ ref'd n.r.e.). Similarly, in its points of error three through six and eight through eleven, the School District raises "no evidence" points, complaining that the trial court erred in granting judgment on the jury's verdict. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970). Therefore, in considering these points of error this court will disregard all evidence adverse to the findings of the jury and consider only that evidence which supports the jury's verdict. *Rourke v. Garza*, 530 S.W.2d 794, 799 (Tex.1975).

■ Tenneco called only one witness, Mr. John Green, who testified concerning the market value of the pipeline and compressor station for each of the three years in question. The jury found the market values of the property to be the same as those stated by Mr. Green.

Mr. Green testified that in arriving at his conclusions of market value he considered two approaches as indicators of value. He testified that he used both the "income capitalization" approach and also the "cost" approach to value.

The School District contends that Mr. Green's testimony as to original cost less depreciation approach is contrary to principles accepted in the appraisal profession, to public policy, and to case law. It contends that if the cost approach is used as an indicator of value, the only valid figures to be considered are the cost of reconstruction of the new facility with the same capabilities as the original, less physical depreciation, and less a dollar amount representing functional and economic obsolescence. It also contends that Mr. Green erroneously allocated less value to the property than the historical cost percentage of Tenneco's property located in the school district bore to the total pipeline system. Tenneco's response is that the method described by the School District is but one valid method of using the cost approach as an indicator of value.

Mr. Green recognized the School District's valuation approach, as well as others, but stated that he chose to use the original cost less Federal Energy Regulatory Commission (FERC) required depreciation because those figures constituted a more meaningful indicator of market value with respect to the particular property involved. However, Mr. Green later stated that had he used the School District's method, his final opinion of value would have been the same.

In essence, the School District's position is that the only authorized appraisal method for the property in question is the "reconstruction cost" method, and in support of this position it relies upon *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, (Tex.1977). In that case the property's market value was highly contested, and Tenneco's expert witness testified he had used both the "income authorization approach" and the "cost approach" in arriving at market value. He stated, however, that he preferred the income approach. The Supreme Court recognized that because segments of natural gas pipelines are rarely sold, their market value could not be determined by comparing prices brought by sales of similar property. It held that the two appropriate methods of value appraisal in such a case were cost approach and income approach. Although the Supreme Court described the cost approach in some detail, it did not hold that the cost approach was the only proper method of appraisal in such a case. Furthermore, the court stated that the complaints concerning the methods used by the appraisal witness did not affect the admissibility of his testimony but only affected the weight to be given the appraisal. *Id.* at page 924. In the case at bar this court is concerned only with the legal sufficiency of the evidence and, therefore, the weight to be accorded Mr. Green's testimony is not in issue.

Also in support of its contention that the cost approach is the only permissible method of appraisal, the School District refers this court to *Missouri-Kansas-Texas Railroad Co. v. City of Dallas*, 594 S.W.2d 766 (Tex.Civ.App.—Dallas 1979, no writ). In that case it was held that the taxpayer's income approach to value was inappropriate because the evidence showed that the property produced a net operating loss, and the taxpayer's appraisal method was substantially the same as that which the Texas Supreme Court found to be in error in *Polk County v. Tenneco, supra*; i. e., the equating of net book value with market value. *Id.* at 771.

In the case at bar, Mr. Green did not contend that net book value was the equivalent of market value, and, in fact, his market value figures, which the jury adopted, were substantially higher than the net book values placed upon the property in question.

The appraisal testimony of Mr. Green constituted some evidence which the jury was entitled to consider in determining the market value of the property in question, and it was within the province of the jury to determine the weight to be given his testimony. *Texas Electric Service Co. v. Wheeler*, 551 S.W.2d 341, 342 (Tex.1977). These points of error are overruled.

■ In its twelfth and thirteenth points of error the School District contends that because Tenneco's sworn renditions of value were higher than the jury's findings of value, Tenneco should be bound by the higher value. In support of this position it refers the court to *French Independent School District of Jefferson County v. Howth*, 134 Tex. 211, 134 S.W.2d 1036 (1940), and other cases based upon article 7345f prior to its amendment in 1977.

Article 7345f, Section 5, as amended in 1977, provides:

DEFENSE TO APPEAL

Sec. 5.

When established by a preponderance of the evidence, it shall be a defense to an appeal under this article that the taxpayer failed to exercise good faith in estimating the cash market value set out in the rendition required in Subsection (b) of Section 4 of this article. A taxpayer does not fail to exercise good faith for purposes of this section if he makes a good faith effort to estimate the cash market value of the property and the assessment ratio, if any, in effect for the taxing authority and renders the value determined by multiplying his estimate of cash market value by the assessment ratio. A taxpayer shall be required to file with the board of equalization a sworn affidavit, in addition to the rendition, prior to invoking the provisions of this article but shall not be required to appear personally or by a representative.

Thus, the statute provides, in effect, that a taxpayer's rendition of value shall not

preclude his right to appeal if he exercises good faith in estimating the cash market value of his property for making his rendition. The statute expressly provides that on appeal to the district court the court or jury shall determine the cash market value of the property. Such findings of value, even though lower than the value estimated in the renditions of the taxpayer, are deemed conclusive. These points are overruled.

In its fourteenth and fifteenth points of error the School District contends that Tenneco's pleadings will not support the judgment because Tenneco prayed only that its rendered value be established as the market value of the property. In its second amended original petition, Tenneco alleged that it had rendered its properties at a value equal to *"at least"* 70% of their market value and that it had exercised good faith *"in estimating"* the market values of the property. In its prayer for relief, it asked that the court or jury determine the cash market values of such properties. These pleadings gave the School District fair notice that Tenneco was asking for a determination of the cash market values of the property regardless of previously rendered values. These points of error are overruled.

The judgment of the trial court is affirmed.