MISSOURI–KANSAS–TEXAS
RAILROAD COMPANY,
Petitioner,

v.

CITY OF DALLAS, Dallas I.S.D. et
al., Respondents.

No. B–9222.

Supreme Court of Texas.

Oct. 21, 1981.

Rehearing Denied Nov. 25, 1981.

Worsham, Forsythe & Sampels, Jos. Irion
Worsham, M. D. Sampels and Michael R.
Johnson, Dallas, for petitioner.

Lee E. Holt, City Atty., Carroll R. Gra-
ham and Linda Lawson, Asst. City Attys.,
Dallas, for respondent.

POPE, Justice.

Missouri-Kansas-Texas Railroad Company, hereafter called Railroad, brought suit to enjoin the City of Dallas and the Dallas Independent School District, hereafter called Dallas, from levying and collecting ad valorem taxes which it says were grossly excessive and based upon an arbitrary method of valuation. The trial court granted Dallas' motion for summary judgment and the court of civil appeals affirmed the judgment. 594 S.W.2d 766. We reverse because of both procedural and substantive law errors. Both courts below placed the burden in the summary judgment hearing upon Railroad, the nonmovant. The summary judgment showing by Dallas was not conclusive. The showing by Railroad, the nonmovant, raised fact disputes about the essential issues.

Railroad has about 2,600 miles of railroad operating in Missouri, Kansas, Texas, and Oklahoma. It has 81.1 miles of that operating property in the City of Dallas, and 76.32 miles in the Dallas Independent School District. Railroad's operating property consists of right-of-way, depots, shops, ballast, ties, signals, superstructures, and other fixtures. The railroad holds ninety percent of the right-of-way by easement only. It owns ten percent of its right-of-way in fee simple.

Dallas determined the value of Railroad's operating property from comparison sales of fee real estate near the right-of-way. Those values were averaged and an amount, generally equal to one-third, was then deducted. This resulted in an assessed value for Railroad's right-of-way within Dallas and the Dallas Independent School District of $7,800,629 and $7,633,968, respectively. Improvements on the right-of-way were set at $1,231,337 for Dallas and $1,046,805 for the Dallas Independent School District. The total assessed value for the operating property was thus set at $9,031,966 and $8,680,773, respectively.

Railroad's witness, Alfred A. Ring, by deposition testified that in his opinion the fair market value of the railroad operating property was $1,633,640 in Dallas and $1,601,610 in the Dallas Independent School District. Ring used a "unit method" to value the entire railroad as an operating unit and then used an allocation procedure to ascertain the value of the segments located within the two taxing jurisdictions.

Ring used three approaches as indications of market value. Under the income approach, he used past income to indicate future income on the theory that a prospective buyer would be interested in the reasonably expected future income of properties purchased. Ring's analysis led him to conclude that Railroad would probably realize a net operating loss for the next five years. He then considered the average annual loss and determined what value that loss would have as a tax shelter. Next, he capitalized the average annual tax benefit to arrive at an indication of Railroad's value. Another method Ring used was to ascertain the fair market value of Railroad's stock and debt. This approach was based on the fact that ownership of a company's stock, bonds, other obligations, and equity constitutes ownership of all the company's assets. Ring's third approach was the cost approach. Ring took the book value of the operating property and deducted an amount representing functional and economic obsolescence to arrive at market value. Ring weighed the results of the income, and the stock and debt approaches equally. He discarded his result under the cost approach.

Using an approach similar to Ring's, Bill Cavanaugh, Railroad's tax commissioner, stated in his deposition that in his opinion the operating property had a fair market value of $1,621,214 and $1,588,919 within Dallas and the Dallas Independent School District, respectively. Ring and Cavanaugh both said that the fair market value of the operating property could not be determined by an examination of the adjoining property because the adjoining property was not comparable and bore no reasonable relationship to the value of railroad property that was limited to use for railroad purposes.

■ The trial court erred in placing the burden of proof at the summary judgment

hearing upon the nonmovant Railroad.[1] The court of civil appeals made the same error by holding that Dallas, as taxing agencies, enjoyed a number of presumptions which then shifted the burden to produce evidence at the hearing away from movants and onto nonmovant Railroad. *Missouri-Kansas-Texas R.R. v. City of Dallas*, 594 S.W.2d 766, 768 (Tex.Civ.App.—Dallas 1979). The presumptions and burden of proof for an ordinary or conventional trial are immaterial to the burden that a movant for summary judgment must bear. *Tigner v. First National Bank*, 153 Tex. 69, 74, 264 S.W.2d 85, 87 (1954). The taxing authorities have also briefed the cause in this court upon the premise that they were not required to present any showing until Railroad first showed that the market value of its property differed from the assessments.

■ Dallas, the summary judgment movants, had the burden to "establish [their] entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of [their] cause of action or defense as a matter of law." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). Stated more specifically, Dallas had the burden to prove conclusively (1) that their valuations were not arbitrary, (2) that Railroad was not substantially injured by the taxing scheme, *State v. Whittenburg*, 153 Tex. 205, 210–11, 265 S.W.2d 569, 573 (1954), and (3) that their assessments were not grossly excessive or discriminatory. *Dallas County v. Dallas National Bank*, 142 Tex. 439, 441, 179 S.W.2d 288, 289 (1944).

The court of civil appeals made a second procedural error in holding that Dallas, as the taxing authorities, supported the judgment by presenting "some evidence of the market value of the railroad right-of-way."

The correct rule is that the movants, Dallas, had to show that they were "entitled to judgment as a matter of law." Tex.R.Civ. Pro. 166–A.

■ Dallas failed to show conclusively that their assessments were not arbitrary and not grossly excessive. Dallas relied entirely upon proof of values by comparable sales to determine market value and utilized lands owned and sold in fee on each side of the right-of-way as comparable sales. After averaging the values, Dallas then reduced that figure by one-third. Railroad held ninety percent of its right-of-way by easement. It owned the fee to only ten percent of the right-of-way. Both the Railroad's fee lands and easement lands, however, were burdened with regulatory restrictions upon the use of the right-of-way and the power to sell. The corridor through which Railroad can and must operate as a railroad can neither be sold, abandoned, changed, nor relocated except as permitted by regulatory agencies. Tex.Rev. Civ.Stat.Ann. art. 6349. The dissimilarities between Dallas' comparison fee tracts and Railroad's restricted right-of-way were so great that Dallas by their own showing failed to establish their right to summary judgment. *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954); *Simmonds v. St. Louis, B. & M. Ry.*, 127 Tex. 23, 91 S.W.2d 332 (1936); *Houston Belt & Terminal Ry. v. Vogel*, 179 S.W. 268 (Tex.Civ. App.—Galveston 1915, writ ref'd).

■ The courts below also erred in wholly disregarding Railroad's method for determining values and in holding that Railroad presented no evidence that raised a fact issue. Railroad raised a fact issue by the deposition testimony of its two expert appraisal witnesses who controverted Dallas' showing of fair market value. Both witnesses were qualified appraisers and both

---

1. The trial court made these findings and conclusions:

"3. When official action of a Board of Equalization is attacked *it will be presumed that such Board discharged its duty as a public agency according to law.*"

"4. Even if it be assumed that a fundamentally wrong principle was used by the Board of Equalization, *Plaintiff still has the burden to show substantial injury.*"

"5. *The burden rests upon the Plaintiff to show by competent evidence the fair market value of its properties* in question."

[Emphasis added.]

expressed their opinion testimony concerning the right-of-way value as railroad operating property. The expert value evidence supplied the contradiction that would defeat a movant's showing of market value. We held in *Texas Electric Service Co. v. Wheeler*, 551 S.W.2d 341 (Tex.1977), that a qualified expert witness may state his opinion of value and that lack of supportive market data would go to the weight and reliability of the testimony.

The court of civil appeals rejected in whole the appraisal method employed by Railroad. The court held that the Texas Constitution requires the taxation of land and that Railroad had only produced data about the railroad as a going business. The Constitution actually refers to the taxation of "property." Tex.Const. art. VIII, §§ 1, 5, 11, 20. Section 5 relates specifically to railroads.[2]

Article 7168, Tex.Rev.Civ.Stat.Ann., states how a railroad shall be assessed:

Art. 7168.[3] Assessment by railroads

Every railroad corporation in this State shall deliver a sworn statement, on or before the thirtieth day of April of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run or in which they own or are in possession of real estate, a classified list of all real estate owned by or in possession of said company in said county, town or city, specifying:

1. The whole number of acres of land, lot or lots, exclusive of their right of way and depot grounds, owned, possessed or appropriated for their use, with a valuation affixed to the same.

2. The whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road.

3. All personal property of whatsoever kind or character, except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State. Acts 1909 p. 373.

Only the operating properties embraced by section 2, article 7168, are here in dispute. The parties are in agreement that Railroad had other section 1 and section 3 properties that are taxable and about which there was no dispute. Dr. Alfred A. Ring, one of Railroad's experts, explained that he determined the fair market value of the operating properties as a whole and, then, allocated an assigned value to each segment. Dr. Ring considered the mileage inside Dallas and the Dallas Independent School District as segments of the whole and next found the percent of the Railroad's total business that was generated in those segments. He explained that use of the unit system was necessary due to the inherent difficulty of determining value with comparable sales. Because railroad right-of-way is never sold, he considered sales of unrestricted fee lands too dissimilar to be fair comparables.

The unit method has been regarded as the historical method for assessing railroad operating property. The court in *State v. St. Louis Southwestern Ry.*, 96 S.W. 69, 70 (Tex.Civ.App. 1906, no writ), explained the method:

The law providing that the whole length of a railroad through a county may be

2. § 5. Railroad property; liability to municipal taxation

Sec. 5. All property of railroad companies, of whatever description, lying or being within the limits of any city or incorporated town within this State, shall bear its proportionate share of municipal taxation, and if any such property shall not have been heretofore rendered, the authorities of the city or town within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon, as on other property lying within said municipality.

3. On January 1, 1982, article 7168 will be repealed pursuant to a statute enacted by the 66th regular session of the Texas Legislature. 1979 Tex.Gen.Laws, ch. 841, sec. 43.03, § 6(a)(1), p. 2329.

assessed for taxes by giving the length thereof and placing a value thereon per mile, in effect, provides for a valuation according to the average value of the entire length of the road through the county; and hence the road is assessed as an entirety and not as so many separate and distinct miles of road nor as separate and distinct parts of the surveys over which it passes.

*See also Central R.R. v. Director, Div. of Tax Appeals*, 8 N.J. 15, 83 A.2d 527, 529 (1951); *Soo Line R.R. v. State*, 286 N.W.2d 459, 462 (N.D.1979); *Pennsylvania R.R. v. Porterfield*, 16 Ohio St. 2d 136, 243 N.E.2d 87, 90 (1968); *Western Maryland Ry. v. Board of Public Works*, 141 W.Va. 413, 90 S.E.2d 438, 442 (1955).

■ Railroad in this case relied upon three indicators of value: the market approach, the cost approach, and the stock and debt approach. We regard the methods as valid and helpful. J. HOWELL, JR., 21 TEXAS PRACTICE, *Property Taxes* § 183, at 207–09 (1975); M. RAYBURN, TEXAS LAW OF CONDEMNATION § 116 (1960).

The United States Supreme Court stated in *Columbus Southern Ry. v. Wright*, 151 U.S. 470, 480–81, 14 S.Ct. 396, 400, 38 L.Ed. 238, 243 (1894):

> The roadway itself of a railroad depends for its value upon the traffic of the company, and not merely upon the narrow strip of land appropriated for the use of the road, and the bars and cross-ties thereon. The value of the roadway at any given time is not the original cost, nor, *a fortiori*, its ultimate cost after years of expenditure in repairs and improvements. On the other hand, its value cannot be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of cross-ties, rails, and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value, for taxation, of a railroad track can *only* be determined by looking at the elements on which the financial condition of the company depends . . . .

This court in *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, 921 (Tex.1977), recognized the difficulty of determining market value of pipelines because comparable sales are of so little use. We also recognized that alternative methods, such as the cost approach and the income approach to value, may be used as alternative tax valuation methods when correctly used:

> Segments of natural gas pipelines, such as those which lie in Polk County, are rarely sold; and their market value therefore generally cannot be determined by comparing the prices brought by sales of similar properties. This fact makes the assessment of pipelines by the taxing authority a difficult task, because market value is defined as "the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it . . . ." *City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954). *See also* Article 7174, and *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936). Thus, the "comparable sales" method of appraising property is of little use in valuing pipelines; and two other methods of appraisal must be used in assessing those properties. These two methods are the cost approach to value and the income approach to value.

The fact that railroad right-of-way is not ordinarily bought and sold makes difficult an assessment of the operating property upon the basis of fair market value. For that reason, Texas has no rigid standard governing the assessment method to be used by taxing authorities in this state in determining railroad value. *Texas & Pacific Ry. v. City of El Paso*, 126 Tex. 86, 98, 85 S.W.2d 245, 251 (1935). No one criteria is usually solely determinative. *See Kansas City, Mexico & Orient Ry. v. Rochester I.S.D.*, 292 S.W. 964 (Tex.Civ.App.--Eastland 1927, no writ). *See also Baker v. Druesedow*, 197 S.W. 1043 (Tex.Civ.App.—Galveston 1917), *rev'd*, 229 S.W. 493 (Tex. Comm'n App.1921, judgm't adopted), *aff'd*,

263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212 (1923).

In reviewing tax assessments for railroad operating property, a court is free to consider all the pertinent facts and estimates and to give them such weight as is reasonable. *Great Northern Ry. v. Weeks,* 297 U.S. 135, 139, 56 S.Ct. 426, 428–29, 80 L.Ed. 532, 536 (1936); *Rowley v. Chicago & Northwestern Ry.,* 293 U.S. 102, 109, 55 S.Ct. 55, 58, 79 L.Ed.2d 222, 226–27 (1934); *see Chicago, Burlington & Quincy Ry. v. Babcock,* 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636, 640 (1907).

The judgments of the courts below sustaining Dallas' motion for summary judgment are reversed, and the cause is remanded to the trial court.