**E.R. GREGG, III Individually and as Trustee, E.R. Gregg, Jr., Robert H. Brown, Hayden T. Brown and Deveraux A. Gregg, Appellants,**

v.

**Bradford GALO, Trustee and Laredo National Bank, Appellees.**

No. 04–85–00429–CV.

Court of Appeals of Texas, San Antonio.

Aug. 29, 1986.

Rehearing Denied Nov. 4, 1986.

Thomas K. Boone, Dallas, for appellants.

C.M. Zaffirini and Stanley Freed, Laredo, for appellees.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a judgment which granted two motions for summary judgment. The two movants are Bradford Galo, plaintiff below, and the Laredo National Bank, third party defendant below.

Galo sued five defendants, asking for specific performance on an earnest money contract. The defendants are E.R. Gregg III, individually and as trustee, E.R. Gregg, Jr., Robert H. Brown, Hayden T. Brown, and Devereaux A. Gregg. All five defendants appeal the summary judgment. The first thirteen points of error relate to the summary judgment in favor of Galo and single out alleged material issues of fact precluding that summary judgment. We agree the summary judgment in favor of Galo is precluded.

On June 8, 1982, Galo and Gregg, III (as trustee) executed a contract of sale on a tract of land in excess of three acres located in Laredo at the intersection of IH 35 and Mann Road. The contract provided in part that the purchaser, in the event the seller could not convey marketable title by the closing date of October 7, 1982, might terminate the contract and recover the earnest money ($50,000.00). The purchaser

also had the right of specific performance. The seller, on the other hand, could also terminate the contract under certain conditions and the seller also had the right to specific performance. The right of the seller to specific performance rested upon certain conditions:

> In the event that Purchaser should fail to consummate this contract *for any other reason except Seller's default* then Escrow Agent shall pay the earnest money to Seller as liquidated damages for the breach of this contract or Seller may, at his option, enforce specific performance of this contract. (Emphasis added.)

The closing did not take place. One of the provisions of the earnest money contract is that within 10 days after date of execution the seller will furnish an owner's title policy commitment letter along with copies of all instruments affecting title. The letter of commitment reflects the subject tract of land was encumbered at that time by a lien arising from a note in the sum of more than $306,000. The record further indicates that in June, 1985, following the summary judgment proceedings, Galo, on instructions of the court, was ordered to execute a warranty deed to Gregg, III. We note the record discloses Galo had encumbered the same land with further substantial liens, which might hinder his ability to transfer a good and marketable title. The Bank, *after the summary judgment trial,* executed releases of these liens. It is undisputed that Galo at all pertinent times was heavily in debt to the Bank.

In November 1982, Galo transferred and assigned to the Laredo National Bank all of his right, title and interest to all monies then due or to become due under the contract. That document is not part of the summary judgment evidence, but all parties agree to the event.

██ The depositions of Robert Brown and Gregg, III indicate that the existence of an easement on the subject property, not heretofore disclosed to or known by them, showed up on the "survey" (or plat) furnished by the abstract company before the closing date. This is a disputed fact issue since Galo argues the objection to the unknown easement was waived. Galo's affidavit, filed shortly before the summary judgment proceedings, states that on June 8, 1982, Gregg, III, Robert Brown and Hayden T. Brown (Robert's father, and a defendant) were present and both Browns agreed that Gregg, III could execute the contract as their agent. He said also that Gregg, III represented he had the authority to act as trustee not only for himself but for his father, Gregg, Jr., Robert Brown, and Hayden Brown.

The affidavit fails to include the name of one of the defendants against whom the summary judgment was entered: Devereaux Gregg. There is no other summary judgment evidence to prove his liability. Thus, Devereaux, by Galo's affidavit, was not bound by the "trustee," and the judgment entered is therefore incorrect as to Devereaux. This is a material fact in the case.

In addition, by deposition Gregg, III and Robert Brown denied that Gregg, III had the authority of the other three individuals. Brown disagreed and said his father was *not* present at the execution of the contract. These are also genuine issues of fact since no one signed the required promissory note as a guarantor.

The record does not disclose whether Galo secured releases of the liens shown by the abstract company's commitment letter to exist on the land at the time the earnest money contract was signed by him and Gregg, III. However, they do not appear to be an obstruction in the 1985 commitment of title. As previously mentioned, the easement which was not known to Brown and Gregg, III until they saw the survey presents another fact question. Galo says by affidavit he was ready, willing, and able to perform the contract in a timely manner. Whether he actually was is a question raised by the summary judgment evidence.

The presumptions and burden of proof for an ordinary or conventional trial are

immaterial to the burden that a movant for summary judgment must bear. *Missouri-Kansas-Texas R.R. Co. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex.1981). The burden of demonstrating lack of a genuine issue of material fact is upon the movant, and all doubts are resolved against the movant. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

We hold that movant Galo did not sustain his burden of demonstrating lack of a genuine issue of material fact.

### THE BANK AS MOVANT

The issue of discovery of the Bank's involvement in the case (conspiracy to commit fraud) was raised by the defendants' response to the Bank's motion for summary judgment which alleged suit was barred by the statute of limitations. One of the grounds on which the defendants based their suit against the Bank was under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE § 17.41 *et seq.* (Vernon Pamphlet Supp.1986). Section 17.56A of the act provides that all actions must be commenced within two years after the consumer discovers or in the exercise of reasonable diligence should have discovered the act or practice.

When a party is opposing a summary judgment filed on the basis of an affirmative defense, the non-movant (here defendants) has no burden in response unless the movant has conclusively established his defense. *See, Torres v. Western Casualty & Surety Co.,* 457 S.W.2d 50 (Tex.1970).

When an opponent to a summary judgment based on a statute of limitations pleads discovery of the cause of action as the ground for "tolling" the statute, the movant still has the burden to negate why the statute should not have been tolled. *See Delgado v. Burns,* 656 S.W.2d 428 (Tex.1983). The question of "discovery" addresses the question when the wrong or injury was discovered or when the party acquired knowledge which in the exercise of reasonable diligence would lead to the discovery of the wrong or injury. It was the Bank-movant's burden to establish there was no genuine issue of fact concerning when the statute of limitations began to run. *See Romo v. Glascock,* 620 S.W.2d 829, 830 (Tex.Civ.App.—Dallas 1981, no writ). Thus discovery was sufficiently raised by defendants, it was the Bank-movant's further burden to show as a matter of law that there was no genuine issue of fact concerning the time when the defendants discovered or should have discovered the nature of the injury.

The Bank cited in its motion for summary judgment portions of the deposition testimony of defendant Gregg, III, wherein he said that misrepresentations were made to defendants by Galo and not the Bank. He said he did not know when the assignment to the Bank of the proceeds was made, but "it became obvious to me that if Galo [assigned the proceeds of the contract] ... The Laredo National Bank was pulling the strings on him somehow." Further, "It was common knowledge that Galo was in serious financial trouble, and I assumed that Laredo National Bank had him by the throat if he was going to start making all these assignments. And therefore, to me, he was doing what Laredo National Bank told him to do." Specifically, he said, "I rely heavily on the fact he assigned his rights ... to them ... [S]omebody at Laredo National Bank said do this and he did it."

Asked if he had specific information that the Bank told Galo to defraud defendants, he answered, "I never heard anyone from [the Bank] tell Galo that, no." He said, however, that if the Bank was "in it when this lawsuit was filed, then they could've been in it when he was making all his representations to Brown concerning the value of the property ... he [Galo] was telling Brown things like you're not going to have any trouble leasing this, and you'll be able to get at least whatever that was [sic] dollars per square foot."

The written response to the motion states that the material fact raised is whether the defendants knew or should

have known of the Bank's involvement in the misrepresentations and fraudulent failure to disclose prior to January 4, 1983. It is stated that Galo's misrepresentations did not put defendants on notice of the Bank's involvement. Further, it is alleged that the Bank's financial interest is enough circumstantially to preclude summary judgment. We note this response was not in the form of an affidavit, but no objection was entered at trial.

In this case the defendants' suit against the Bank was filed on January 4, 1985. The Bank pled the two year bar under the DTPA and also under TEX.BUS. & COM. CODE § 27.01 (Vernon 1968 & Vernon Pamphlet Supp.1986). It cited the beginning time as October 7, 1982, the closing date, or as November 1982 or prior thereto.

In *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977) the discovery rule is defined as:

> [t]he legal principle that a statute of limitations barring prosecution of an action [in that case medical malpractice] runs, not from the date of the practitioner's wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff. [Citations omitted] The rule is not a plea of confession and avoidance but is the test to be applied in determining when a plaintiff's cause of action accrued. To be entitled to summary judgment, the burden is on the movant ... to negate the pleading of the *discovery rule* by proving as a matter of law that there is no genuine issue of fact concerning the time when the [defendant] discovered or should have discovered the nature of the injury. *Zale v. Rosenbaum,* 520 S.W.2d 889 (Tex.1975); *Oram v. General American Oil Company of Texas,* 513 S.W.2d 533 (Tex.1974); *Torres v. Western Casualty & Surety Co.,* 457 S.W.2d 50 (Tex.1970).

The Court noted that in a conventional trial on the merits, proof of facts suspending operation of a statute of limitations is the burden of the party pleading suspension.

If the response in this case had consisted of pleas of concealment or estoppel, these would be pleas in avoidance on which defendants would have the burden of proof by competent summary judgment evidence, once limitations was established as a matter of law.

The defense of the movants was the bar of limitations. This was not established conclusively since the contention was being made that discovery of the Bank's involvement was not made prior to January 4, 1983. The question is: should the defendants have known of the Bank's involvement (if it was involved) merely by learning of an assignment of the proceeds of the contract. We believe this act alone, a common business practice, would not require an affirmative answer. Proof at a conventional trial might lead to either an affirmative or a negative answer under the facts of this case. If the contention is true the result would be that limitations did not begin to run until the time of discovery as alleged. *See Oram v. General American Oil Company of Texas, supra* at 534; *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974); *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1973).

■ We hold the Bank-movant did not meet its burden to negate why the statute of limitations should not have been tolled. It is unnecessary that we discuss the additional points of error concerning attorney's fees awarded to the Bank.

The summary judgment is reversed and the cause is remanded for trial. Costs of appeal are to be assessed equally between the appellees.

CADENA, C.J., concurs in result.